**The STATE of Ohio, Appellee,**

v.

**MARTZ, Appellant.**

[Cite as *State v. Martz,* 163 Ohio App.3d 780, 2005-Ohio-5428.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 04CA376.

Decided Oct. 11, 2005.

782

John D. Ferrero, Assistant Prosecuting Attorney, for appellee.

Frederick M. Pitini, for appellant.

HOFFMAN, Judge.

{¶ 1} Defendant-appellant, Larry Martz, appeals his conviction and sentence entered by the Stark County Court of Common Pleas, on one count of having weapons while under disability, in violation of R.C. 2923.13(A), following a jury trial. Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE CASE AND FACTS

{¶ 2} On July 26, 2004, the Stark County Grand Jury indicted appellant on the aforementioned charge, a felony of the third degree.[1] Appellant appeared before the trial court for arraignment on July 30, 2004, and entered a plea of not guilty to the indictment. The trial court appointed the Stark County Public Defender's Office to represent appellant.

{¶ 3} At a pretrial conference on August 9, 2004, appellant informed the trial court that he had rejected the Public Defender's Office and intended to represent himself. The trial court advised appellant against such a decision, discussed the decision at length with him, and continued the matter for one week. Appellant

---

1. In May 1996, the Guernsey County Court of Common Pleas had convicted appellant on one count of assault, a fourth-degree felony, and one count of carrying a concealed weapon, a third-degree felony.

appeared before the trial court on August 16, 2004. Again, the trial court tried to persuade appellant against representing himself. Appellant did agree to speak with Attorney John Mackey, whom the trial court appointed to serve as stand-by counsel.

{¶ 4} On August 25, 2004, appellant moved the trial court to dismiss the indictment, arguing the underlying conviction from Guernsey County was void. The trial court overruled the motion. On September 7, 2004, appellant requested that the trial court appoint standby counsel of appellant's choice. The trial court, finding Attorney Mackey effective, denied the request. The trial court again attempted to encourage appellant not to represent himself. Despite the trial court's urging, appellant filed a written waiver of counsel.

{¶ 5} Appellant filed a motion to suppress. The trial court conducted a hearing on the motion on October 25, 2004. Upon conclusion of the testimony, the trial court overruled the motion. The trial court once again recommended to appellant that he not represent himself and asked appellant to reconsider having Attorney Mackey serve as counsel. Appellant refused.

{¶ 6} The state filed a motion in limine, seeking to prevent appellant from collaterally attacking the Guernsey County conviction, from prejudicing the jury with a conspiracy theory defense, and from commenting on the inadmissible prior convictions of witnesses. The trial court conducted a hearing on the motion on November 19, 2004. The trial court granted the state's motion in part. Once more, the trial court informed appellant that representing himself would be a mistake.

{¶ 7} The matter proceeded to jury trial on November 22, 2004. Throughout the course of the trial, the trial court gave appellant numerous opportunities to consult with standby counsel.

{¶ 8} At trial, Eric Martz testified that he purchased the residence at 6567 Easton Street, in Louisville, Stark County, Ohio, from his father, Robert Martz, in early June, 2004. Prior to the sale, appellant was living at the residence with Robert Martz, who is appellant's brother. Eric advised appellant about his acquiring the property and informed appellant that he needed to move out of and clean up the house.

{¶ 9} After working all day on June 27, 2004, Eric went to visit his brother's brother-in-law, who lives in the house next door to the 6567 Easton Street residence. Eric had a couple of beers, then proceeded to 6567 Easton Street, where he spoke with appellant. Eric asked appellant why he had not cleaned up or prepared to move out of the house. Eric informed appellant that he (Eric) was going to clean the house and left to find people to assist. Eric returned with his brother, Kerry Martz. The two brothers began to haul piles of newspaper

out of the house to a burn pit. After several trips, appellant grabbed a basket out of Eric's hands, telling Eric not to take his things. Eric pushed appellant, who fell. The argument escalated into a shoving match. During the struggle, appellant reached under his shirt to retrieve a loaded gun from a holster strapped to his body. In an attempt to prevent appellant from unholstering the gun, Eric hit appellant several times. Kerry jumped into the fray. Eric held appellant down, and Kerry seized the gun from appellant. Kerry also retrieved three loaded magazines out of a pouch secured around appellant's waist.

{¶ 10} Kerry unloaded the gun, placed it on a table, and called the police. Appellant sat on the floor until the police arrived. Deputy Steve Miller and Deputy Eddy of the Stark County Sheriff's Department were dispatched to the scene. When they arrived, they found appellant sitting on the floor in the dining area. Eric and Kerry were standing in the dining area. Initially, appellant was reluctant to speak with the deputies, but subsequently told them he had the weapon for protection. Appellant advised the officers that he did not want to go to the hospital unless he was going to be arrested. The officers subsequently arrested appellant, who then asked to be transported to the hospital. Appellant suffered some facial injuries, but the injuries were not severe enough to cause any impairment or loss of consciousness.

{¶ 11} Upon conducting a criminal history check of appellant, the deputies learned appellant had a 1996 conviction for assault, a fourth-degree felony, out of Guernsey County. The deputies collected a .45 caliber semiautomatic firearm, a holster, loaded magazines, and ammunition from the scene. Criminalist with the Stark County Crime Lab determined the firearm was operable.

{¶ 12} After hearing all the evidence and deliberations, the jury found appellant guilty as charged. The trial court sentenced appellant to the maximum sentence of five years imprisonment. The trial court memorialized the verdict and sentence via entry filed December 3, 2004.

{¶ 13} It is from this conviction and sentence that appellant appeals, raising the following assignments of error:

{¶ 14} "The trial court erred to the prejudice of the appellant Larry Martz by imposing the maximum sentence of five years for the conviction of a third degree felony.

{¶ 15} "The trial court erred to the prejudice of the appellant Larry Martz by allowing him to represent himself pro-se.

{¶ 16} "The conviction of the appellant Mr. Larry Martz was against the manifest weight and sufficiency of the evidence.

{¶ 17} "The trial court erred to the prejudice of the appellant Mr. Larry Martz when it failed to suppress the evidence against him when he was in a disoriented

state and gathered from his own home upon the consent of a party who had no authority to consent to any search.

{¶ 18} "The appellant Mr. Larry Martz, as a result of a multitude of cumulative errors by the trial court was denied his right to a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution and similar provision of the Constitution of the state of Ohio."

# I

{¶ 19} In his first assignment of error, appellant challenges the trial court's imposition of a maximum sentence. Appellant contends that the trial court imposed a maximum sentence upon him in retaliation for his representing himself pro-se. We disagree.

{¶ 20} Pursuant to R.C. 2929.14(C), a trial court may impose the maximum sentence under the following conditions:

{¶ 21} "(C)[T]he court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."

{¶ 22} This statute is to be read in the disjunctive. See *State v. Comersford* (June 3, 1999), Delaware App. No. 98CAA01004, 1999 WL 436745. Accordingly, a maximum sentence may be imposed if the trial court finds that any of the above listed categories apply.

{¶ 23} In *State v. Redman,* Stark App. No. 2002CA00097, 2003-Ohio-646, 2003 WL 294234, this court held: "While a recitation of the statutory criteria alone may be enough to justify more than the minimum sentence, it is not enough to justify the imposition of the maximum sentence. The trial court also must provide its reasons. As stated in R.C. 2929.19(B)(2)(d): The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances: '(d) If the sentence is for one offense and it imposes a prison term for the offense that is the maximum prison term allowed for that offense by division (A) of section 2929.14 of the Revised Code, its reasons for imposing the maximum prison term.'" Id. at ¶ 12–13.

{¶ 24} Thus, a trial court has discretion to impose a maximum sentence if it determines that one of the factors listed in R.C. 2929.14(C) exists, and if it explains its reasons for imposing a maximum sentence as required by R.C. 2929.19(B)(2)(d).

{¶ 25} At the sentencing hearing, the trial court found that appellant showed no remorse for his actions and posed the greatest likelihood of recidivism. The trial court specifically found: "It is my finding by your conduct in 1996, by your conduct in 2004, the preparation, the plans which you made, you had gone out and gotten what archaically probably I refer to as belt suspender straps, set it up on a web belt. And you were ready. You had the sufficient number of rounds of ammunition. You had chosen a .45 caliber semiautomatic handgun, which I think that all of us can agree, because of our military background agree is the most effective killer that has ever been devised. But if you want to be ready to kill a man, you get a .45. And that's exactly what you did. And you had enough rounds to take enough people with you. So, in my view, that shows you are—you pose the greatest likelihood of committing future crimes."

{¶ 26} Based upon the foregoing, we find that the trial court provided sufficient reasons for imposing the maximum sentence.

{¶ 27} Appellant's first assignment of error is overruled.

## II

{¶ 28} In his second assignment of error, appellant contends that the trial court erred in allowing him to represent himself pro se. Appellant concedes, "There were several hearings held in this matter and the Judge on numerous occasions gave Mr. Martz the opportunity to have counsel for himself. Mr. Martz insisted on representing himself, and the record reflects that it was his choosing." Appellant continues: "However, Mr. Martz implores this court to reverse the decision to allow him to represent himself for the simple fact that it was so obviously the wrong decision that the trial court should have insisted he had counsel to represent him."

{¶ 29} The Sixth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides criminal defendants with the fundamental right to counsel. See *Gideon v. Wainwright* (1963), 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799. A defendant, however, may waive this right where his waiver is made knowingly, voluntarily, and intelligently. *State v. Gibson* (1976), 45 Ohio St.2d 366, 377–378, 74 O.O.2d 525, 345 N.E.2d 399, citing *Faretta v. California* (1975), 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562. See, also, Crim.R. 44.

{¶ 30} "In order to establish an effective waiver of [the] right to counsel, the trial court must make sufficient inquiry [of the defendant] to determine whether the defendant fully understands and intelligently relinquishes that right." *Gibson,* supra, at paragraph two of syllabus.

{¶ 31} In verifying a defendant's waiver of counsel is made knowingly, voluntarily, and intelligently, a trial court should determine whether the defendant was advised of the dangers and disadvantages of self-representation. Id. at 377, 74 O.O.2d 525, 345 N.E.2d 399. See, also, *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525, 45 L.Ed.2d 562; *State v. Weiss* (1993), 92 Ohio App.3d 681, 686, 637 N.E.2d 47. The trial court should also consider whether the defendant was advised of the nature of the charges and the range of allowable punishments, and, in addition, may consider whether the trial court advised the defendant of the possible defenses to the charges and applicable mitigating circumstances. See *Gibson,* 45 Ohio St.2d at 377, 74 O.O.2d 525, 345 N.E.2d 399, citing *Von Moltke v. Gillies* (1948), 332 U.S. 708, 724, 68 S.Ct. 316, 92 L.Ed. 309. A court may also consider various other factors, including the defendant's age, education, and legal experience. *State v. Doane* (1990), 69 Ohio App.3d 638, 647, 591 N.E.2d 735.

{¶ 32} Initially, we note that appellant signed a written waiver of counsel. Upon review of the entire record in this matter, we find that the trial court advised appellant, at length, against representing himself on at least six occasions prior to trial. Additionally, throughout the course of the trial, the trial court encouraged appellant to consult with appointed standby counsel. Nonetheless, appellant chose to represent himself. We are hard-pressed to think of any other means by which the trial court could have encouraged, urged, advocated, insisted, or convinced appellant to be represented by counsel.

{¶ 33} Appellant's second assignment of error is overruled.

### III

{¶ 34} In his third assignment of error, appellant asserts that his conviction was based upon insufficient evidence and was against the manifest weight of evidence. Specifically, appellant argues that the jury should have found he acted in self-defense.

{¶ 35} In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.

{¶ 36} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

{¶ 37} Appellant was convicted of having weapons under disability, in violation of R.C. 2923.13, which provides: "(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

{¶ 38} " * * *

{¶ 39} "(2) The person is under indictment for or has been convicted of any felony offense of violence * * *."

{¶ 40} In order to establish the affirmative defense of self-defense, the evidence must show the following three elements: "(1) the defendant was not at fault in creating the violent situation; (2) the defendant has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was the use of force; and (3) the defendant did not violate any duty to retreat." *State v. Perry*, Richland App. No. 02–CA–77, 2003-Ohio-6097, 2003 WL 22700721, at ¶ 25.

{¶ 41} In the instant action, the evidence revealed that appellant possessed the weapon prior to the confrontation with his nephews. We find that self-defense is not available as a defense to having weapons while under disability as a matter of law where an offender possessed the weapon prior to the incident where alleged self-defense arises. In support of his contrary position, appellant relies on the Eighth District Court of Appeals opinion in *State v. Hardy* (1978), 60 Ohio App.2d 325, 14 O.O.3d 289, 397 N.E.2d 773. We find *Hardy* to be factually distinguishable.

{¶ 42} In *Hardy,* the accused had a prior conviction for a drug-related offense; therefore, he was prohibited by the provisions of R.C. 2923.13 from knowingly acquiring, having, carrying, or using a firearm or dangerous ordnance. Id. at 325, 14 O.O.3d 289, 397 N.E.2d 773. On November 22, 1976, the accused was

working in a beverage store owned by his wife, when an employee, who had not been at work the previous two days, entered the premises. The employee told the accused that he had been forced to leave his sister's home where he had been living and needed some money to pay the rent at a rooming house. The accused told the employee that payday was Saturday, but agreed to give him some money, if he returned at closing time. The employee responded that he needed the money immediately and proceeded to help himself to money in the cash box. When the accused objected, the employee grabbed for a rifle located at the corner of the counter, which the accused knew was loaded and ready to be discharged. As the accused grabbed for the weapon and seized it from the employee, he fell back against a wall. The employee grabbed a razor, which the accused had been using to cut price tags, and leapt over the counter that separated the two men. The accused then fired the rifle twice at the employee, wounding him. After taking the employee to a hospital, defendant called the police. The accused was subsequently indicted and convicted of having weapons while under disability.

{¶ 43} On appeal, the Eighth District Court of Appeals was "faced squarely with the question of whether the state may by law prohibit an individual under disability from utilizing an available firearm or dangerous ordnance in self-defense, when confronted with an overt physical threat or assault on his person by another individual with a deadly weapon." Id., 60 Ohio App.2d at 328, 14 O.O.3d 289, 397 N.E.2d 773. The *Hardy* court held that "the prohibitions of R.C. 2923.21 do not restrict the right of an individual under disability from acting in self-defense, when he did not knowingly acquire, have, carry or use a firearm previously." Id. at 330, 14 O.O.3d 289, 397 N.E.2d 773. Unlike the accused in *Hardy,* appellant herein did, in fact, "knowingly acquire, have, carry or use a firearm" prior to the confrontation with his nephews. Accordingly, we find that appellant's mere possession of the weapon in anticipation of a possible confrontation was sufficient evidence from which the jury could find him guilty of having weapons under disability. Appellant's conviction was neither based upon insufficient evidence, nor was it against the manifest weight of the evidence.

{¶ 44} Appellant's third assignment of error is overruled.

## IV

{¶ 45} In his fourth assignment of error, appellant asserts that the trial court erred in overruling his motion to suppress.

{¶ 46} There are three methods of challenging a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must

determine whether the findings of fact are against the manifest weight of the evidence. See *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming that the trial court's findings of fact are not against the manifest weight of the evidence and that it has properly identified the law to be applied, an appellant may argue that the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 641 N.E.2d 1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 620 N.E.2d 906; *Guysinger*, supra.

{¶ 47} In the matter presently before us, appellant challenges the trial court's findings of fact. Specifically, appellant takes issue with the trial court's finding that his statements to police were voluntary when he was in a disoriented state and the trial court's finding the police had consent to search his residence when he never gave such consent.

{¶ 48} Dr. Jody Wozniak, the E.R. physician who examined appellant on the night of the incident, testified at the suppression hearing. In reviewing the medical records, she noted that appellant was alert and oriented. Further, the medical records revealed that appellant did not present with a history of loss of consciousness. The CAT scan of appellant's head showed no brain injury.

{¶ 49} Deputy Steve Miller testified that while he was with appellant, appellant never lost consciousness or appeared as if he were about to lose consciousness. The deputy conceded that appellant appeared to be slightly disoriented when the officers initially arrived at the scene. Deputy Miller added that appellant understood the questions he was being asked and answered questions appropriately.

{¶ 50} Additionally, contrary to appellant's assertion, the officers did not search the residence. Eric Martz, the owner of the residence, and Kerry Martz provided the officers with physical evidence. Even if Eric and Kerry Martz did not provide the evidence to the officers, Eric's consent to search the residence would be sufficient authority as he is the owner of the premises.

{¶ 51} Based upon the foregoing and the entire record in this matter, we do not find that the trial court erred in overruling appellant's motion to suppress.

{¶ 52} Appellant's fourth assignment of error is overruled.

## V

{¶ 53} In his final assignment of error, appellant asserts that he was denied a fair trial due to the cumulative effect of the errors occurring during trial.

{¶ 54} Under the doctrine of cumulative error, a judgment may be reversed when the cumulative effect of errors deprives a defendant of his constitutional rights, even though such errors, standing alone, are not prejudicial. *State v. DeMarco* (1987), 31 Ohio St.3d 191, 196–197, 31 OBR 390, 509 N.E.2d 1256.

{¶ 55} Having found no errors, we find that appellant was not denied a fair trial.

{¶ 56} Appellant's fifth assignment of error is overruled.

{¶ 57} The judgment of the Stark County Court of Common Pleas is affirmed.

Judgment affirmed.

BOGGINS, P.J., and EDWARDS, J., concur.