[Cite as *State v. Burrows*, 2014-Ohio-3164.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                      :

                               :       Appellate Case No. 25918

     Plaintiff-Appellee         :

                               :       Trial Court Case No. 12-CR-1856

v.                            :

                               :

JAMES D. BURROWS, JR.    :       (Criminal Appeal from

                               :       Common Pleas Court)

     Defendant-Appellant     :

                               :

. . . . . . . . . .

O P I N I O N

Rendered on the 18th day of July, 2014.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. #0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45402
       Attorney for Plaintiff-Appellee

DANIEL A. PERRY, Atty. Reg. #0087548, 123 Boggs Lane, Cincinnati, Ohio 45246
       Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1}    Defendant-appellant James Burrows appeals from his conviction and sentence

for Having a Weapon While Under a Disability. Burrows contends that his confession should not have been admitted, because the State failed to present evidence of the corpus delicti. He further contends that the State failed to present evidence sufficient to sustain the conviction. Finally, Burrows contends that his conviction is against the weight of the evidence because he proved his affirmative defense of self-defense.

{¶ 2} We conclude that there was sufficient independent evidence to permit the admission of Burrows's confession. We also conclude that the evidence in the record is sufficient to sustain the conviction. We finally conclude that Burrows's conviction is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.

## I. Shots Are Fired

{¶ 3} Dayton Police Officer David House was dispatched on a call regarding shots fired at 5004 Hoover Avenue. When he arrived at the scene, he found bullet holes in the front of the house. He also discovered spent shells from a 45-caliber weapon and a 9-millimeter weapon located in the street in front of the home. According to House, he also noticed three shotgun shell casings by the sidewalk. Eventually two more shotgun shells were found. House testified that Burrows and his sister Stephanie Baxter then arrived on the scene followed by Dayton Police Officer Eric Kleinhans.

{¶ 4} Burrows told House that he had been inside the house when the shooting started. Burrows said that after the shots stopped, he ran into the front yard and saw a car driving away from the residence. Burrows then ran back into the house, grabbed a shotgun, and went back outside. Burrows saw two men coming out of the bushes to the west of the house. The men

walked to the opposite side of the street.

{¶ 5} Burrows saw a car turn around. He believed it was coming "to possibly pick these two guys up." Burrows told House that he fired the shotgun to "possibly scare anybody off that might be hiding." Burrows then left the scene, took the shotgun, and went to his aunt's apartment, where he left the shotgun.

{¶ 6} House testified that he spoke to someone identified as Burrows's aunt about the gun. Officer Kleinhans later went to the apartment to retrieve the shotgun.

{¶ 7} House discovered that Burrows had a felony record, so he arrested Burrows, informing Burrows that he was not allowed to possess a weapon, because of his prior felony. Burrows responded that the conviction "was so old he thought he could."

{¶ 8} The testimony of Officer Kleinhans corroborated House's testimony. Kleinhans also testified that he observed bullet holes in three windows in the front of the home. There were also bullet holes near the door. Kleinhans observed damage to the interior walls of the house caused by bullets. He testified that the shotgun shells were found in the yard, while the other shells were found in the street gutter near the yard. Kleinhans attempted to make contact with the aunt to retrieve the weapon, but no one was home.

{¶ 9} Burrows presented the testimony of his sister, Stephanie Baxter. Baxter testified that she was in the home with Burrows, her mother and about seven other people watching television, when she heard gun shots, and the glass from the windows shattered. Everyone hit the ground. After the shooting stopped, Baxter went to the door to look outside, and heard Burrows outside yelling, "come on, let's go, let's go, let's go." Baxter testified that Burrows sounded "hysterical, nervous and fear[ful]." Everyone in the house left the premises in vehicles,

and went to their aunt's apartment. Baxter and Burrows stayed at the apartment for approximately fifteen minutes, and then drove back to the house on Hoover Avenue. They parked the car near the house, and Baxter called the police to report the shooting. Once the police arrived, Baxter and Burrows returned to the Hoover Avenue house.

{¶ 10} Jacquelin McDonald testified that she is great-aunt to both Burrows and Baxter. She was at her apartment when Burrows, Baxter, and some others came to her apartment. Baxter and Burrows left after a while. McDonald testified that she kept a shotgun in the home on Hoover Avenue.[1] McDonald testified that Baxter later called her, and that she understood that a police officer was coming to the apartment "about a shotgun." She testified that no one ever came to her apartment. On cross-examination, McDonald testified that she actually spoke to an officer on the phone regarding a gun, and she told him she did not have one. She further testified that the officer did not say that he was coming to her apartment.

## II. The Course of Proceedings

{¶ 11} Burrows was charged by indictment with one count of Having a Weapon While Under a Disability, in violation of R.C. 2923.13(A)(3). At trial, it was stipulated that Burrows had been convicted of Possession of Heroin in 2009. A jury found Burrows guilty as charged. He was sentenced to community control sanctions. Burrows appeals.

## III. The Spent Shotgun Shell Casings Found at the Location in which Burrows Confessed

---

[1] McDonald was in the process of moving from the Hoover Avenue home to the apartment. Burrows and Baxter resided with her at the home, and were going to move into the apartment with her.

**to Having Fired a Shotgun, and the Evidence that Burrows Was Under a Disability, Constitute Sufficient Independent Evidence that a Crime Was Committed, and that Burrows Committed it, to Satisfy the Corpus Delicti Rule**

{¶ 12}   Burrows's First Assignment of Error states:

THE TRIAL COURT ERRED IN FAILING TO LIMIT THE TESTIMONY OF THE STATE'S WITNESS ERIC KLEINHANS AND OFFICER HOUSE BASED ON THE APPELLANT'S OBJECTION THAT THE CORPUS DELECTI [SIC] HAD NOT BEEN SHOWN AND OFFICER KLEINHANS AND OFFICER HOUSE SHOULD NOT HAVE BEEN PERMITTED TO TESTIFY AS TO APPELLANT'S ALLEGED OUT-OF-COURT STATEMENTS.

{¶ 13}   Burrows claims that the trial court should not have permitted the State to introduce the inculpatory statements he made to House.   Specifically, he objects to the inclusion of testimony that he admitted to the possession of a firearm.   In support, he argues that the State failed to establish the corpus delicti of the charged offense.

{¶ 14}   This court has previously discussed the issue of the corpus delicti in *State v. Gabriel*, 170 Ohio App.3d 393, 2007-Ohio-794, 867 N.E.2d 474, ¶ 56-57 (2d Dist.), *reversed on other grounds, In re Criminal Sentencing Cases*, 116 Ohio St.3d 31, 2007-Ohio-5551, 876 N.E.2d 528, wherein we stated:

The corpus delicti of an offense consists of the act and the criminal agency of the act. Before a confession of a crime may be admitted at trial, the state must introduce evidence independent of the confession to establish the corpus delicti of

the offense. The corpus delicti rule is designed to protect "persons who confess to crimes that they not only did not commit themselves, but which were never committed by anyone." Accordingly, "this rule does not require evidence, other than the confession, showing that the accused committed the crime but, rather, requires some evidence that a crime was, in fact, committed."

"The evidence presented need not be so strong that it is capable of persuading a factfinder on some element of the crime beyond a reasonable doubt." Nor must the evidence be "even enough to make it a prima facie case." Rather, "[i]t is sufficient if there is some evidence outside of the confession that tends to prove some material element of the crime charged." The corpus delicti rule does not require evidence related to all elements of the crime. Furthermore, the evidence need not be direct but, rather, may be circumstantial. Although the rule remains applicable, the Supreme Court has indicated that it need not be applied "with a dogmatic vengeance." (Citations omitted.)

{¶ 15} The Supreme Court of Ohio has stated that "[i]n light of the myriad procedural protections granted defendants in modern criminal practice, however, 'the corpus delicti rule is supported by few practical or social policy considerations.' " *State v. Van Hook*, 39 Ohio St.3d 256, 261, 530 N.E.2d 883 (1988). Thus, while the corpus delicti rule requires the State to present some independent evidence of the criminal act and criminal agency, that burden is minimal. *Id.*; *State v. Barker*, 2d Dist. Montgomery No. 23691, 2010-Ohio-5744, ¶ 10.

{¶ 16} In the case before us, Burrows contends that the State failed to offer independent evidence of the corpus delicti, because there was no evidence that a gun was recovered, or that

Burrows possessed it. But the State did present evidence that a shotgun was kept in the home. It also presented evidence that the shots directed at the house were fired from weapons using 45-caliber and 9-millimeter shells, and there is no evidence that the damage to the house was caused by a shotgun. The record further shows that the police recovered five spent shotgun shells in the front yard of the house – evidence that a shotgun was fired in that location. Thus, there is independent evidence of the act and the agency in the form of evidence that a shotgun was fired in the location from which Burrows confessed to having fired it. Independent evidence was also introduced that Burrows was under a disability.

{¶ 17}   The First Assignment of Error is overruled.

### IV.   Based on the Evidence in the Record, a Reasonable Jury Could Find, Beyond Reasonable Doubt, that Burrows Committed the Charged Offense

{¶ 18}   Burrows asserts the following as his Second Assignment of Error:

THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIMINAL RULE 29 AS PLAINTIFF-APPELLEE FAILED TO PRESENT SUFFICIENT EVIDENCE TO EACH ELEMENT OF THE CRIMINAL OFFENSE OF HAVING WEAPONS WHILE UNDER DISABILITY.

{¶ 19}   Burrows contends that the State failed to produce evidence sufficient to sustain the conviction, so that the trial court erred by overruling his Crim.R. 29 motion for acquittal.

{¶ 20}   When reviewing the denial of a Crim.R. 29(A) motion, an appellate court applies the same standard it uses in the review of a sufficiency-of-the-evidence claim. The

relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id* .

{¶ 21}  Burrows was convicted of Having a Weapon While Under a Disability, in violation of R.C. 2923.13, which provides in pertinent part as follows:

(A) Unless relieved from disability as provided in section 2923.14 of the

Revised Code, no person shall knowingly acquire, have, carry, or use any firearm

or dangerous ordnance, if any of the following apply:

* * *

(3) The person * * * has been convicted of any felony offense involving

the illegal possession, use, sale, administration, distribution, or trafficking in any

drug of abuse * * *.

{¶ 22}   "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 23}  It is stipulated that in September 2009 Burrows was convicted of Possession of Heroin, a fourth-degree felony.  The presence of the spent shotgun shells at Burrows's house is evidence from which a reasonable jury could find that a shotgun was fired there, and Burrows admitted that he fired the shotgun.  This evidence, if believed, would permit a reasonable jury to

find, beyond reasonable doubt,  that Burrows was guilty of the charged offense.   The trial court did not err by overruling the motion for acquittal.

{¶ 24}   The Second Assignment of Error is overruled.


**V.   The Jury's Conclusion that Burrows Failed to Prove**

**Self-Defense by a Preponderance of the Evidence Is**

**Not Against the Manifest Weight of the Evidence**

{¶ 25}   Burrows's Third Assignment of Error provides as follows:

TRIAL COURT ERRED IN FAILING TO ISSUE A DIRECTED VERDICT AND ENTER A FINDING OF NOT GUILTY AS DEFENDANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SUPPORTS DEFENDANT'S CLAIM OF SELF-DEFENSE BY A PREPONDERANCE OF THE EVIDENCE.

{¶ 26}   Burrows contends that the jury's finding that he did not commit the act of Having a Weapon While Under a Disability in self-defense is against the manifest weight of the evidence. "Weight of the evidence concerns the inclination of the greater amount of credible evidence offered at trial, to support one side of the issue, rather than the other." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *Black's Law Dictionary* 1594 (6th Ed.1990). The credibility of the witnesses and the weight to be given to their testimony are primarily for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). "Because the factfinder, be it the jury, or, * * * the trial judge, has the opportunity to see and hear the witnesses, the cautious exercise of discretionary power of a court of appeals to find

that a judgment is against the manifest weight of the evidence requires that a substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witnesses." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 477684, *5 (Aug. 22, 1997). This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility, unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. Less deference is given to a fact-finder's weighing of reasonable inferences, but some deference is still given. *Id.*

{¶ 27} Burrows requested and received an instruction on self-defense. "Self-defense is an affirmative defense that excuses or justifies a use of force which would otherwise result in criminal liability. The basis of self-defense is the perceived necessity of the use of force to protect oneself." *State v. Bayes*, 2d Dist. Clark No. 00CA0032, 2000 WL 1879101, * 3-4 (Dec. 29, 2000). "To establish self-defense, the following elements must be shown: (1) the [offender] was not at fault in creating the situation giving rise to the affray; (2) the [offender] has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the [offender] must not have violated any duty to retreat or avoid the danger." *Id.*, quoting *State v. Melchior*, 56 Ohio St.2d 15, 20-21, 381 N.E.2d 195 (1978).

{¶ 28} "Self-defense is not merely a denial or contradiction of evidence offered by the state to prove the essential elements of the charged crime. Rather, it is an admission of the prohibited conduct coupled with a claim that the surrounding facts or circumstances exempt the accused from liability therefor — 'justification for admitted conduct.' " *State v. Grubb*, 111 Ohio

App.3d 277, 282, 675 N.E.2d 1353 (2d Dist.1996), citing *State v. Poole*, 33 Ohio St.2d 18, 294 N.E.2d 888 (1973); *State v. Martin*, 21 Ohio St.3d 91, 488 N.E.2d 166 (1986).

{¶ 29}  Burrows told House that he went out after the shots stopped, and saw a car driving away from the residence.  He then returned to the house and retrieved the shotgun, took it outside, and saw two individuals.  He then fired the shotgun.  Burrows did not make any statement indicating that he thought the individuals posed a threat of imminent harm, or that he was in imminent danger.  He left the relative safety of the house and went outside to confront the shooters, firing shots in the air to scare off anyone who might have been hiding in the vicinity. We conclude that the jury did not lose its way in finding that Burrows had failed to prove self-defense by a preponderance of the evidence.

{¶ 30}  Furthermore, as the State points out, there is evidence in the record from which the jury could find that even after the shooting at his house, and any imminent danger represented thereby, Burrows maintained possession of the shotgun, transporting it to his aunt's apartment. A reasonable jury could have found from this fact, alone, that Burrows failed to prove self-defense by a preponderance of the evidence.

{¶ 31}  Accordingly, the Third Assignment of Error is overruled.

## VI.  Conclusion

{¶ 32}  All of Burrows's assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

WELBAUM, J., concurs.

HALL, J., concurring:

{¶ 33} I agree with the result and the analysis of the issues that were presented by the appellant. I write separately with regard to the third assignment of error to suggest that the affirmative defense of self-defense, although requested by the defense, given by the court, but not adopted by the jury, is not an adequate characterization of a defense to having a weapon under disability. Rather, in my view, the correct defense should be classified under "justification" and contains elements distinctively different from the self-defense instruction given. Nonetheless, because the instruction given is what the defense requested, there is no error.

{¶ 34} I acknowledge that in *State v. Hardy*, 60 Ohio App.2d 325, 397 N.E.2d 773 (8th Dist.1978) a narrow exception to having a weapon while under disability was recognized by the Eighth District if the weapon was possessed for self-defense. There, the defendant was under a disability and was employed in a beverage store. He was the victim of a robbery. To stop the armed robber the defendant used the store owner's nearby rifle, which was accessible to all employees, and shot the robber. *Hardy* stands for the proposition that a person under a firearm disability is not prevented from "acting in self-defense, when he did not knowingly acquire, have, carry or use a firearm previously." *Id.* at 330.

{¶ 35} After *Hardy*, Ohio courts have wrestled with its application in various factual situations. In *State v. Phelps*, 2d Dist. Montgomery No. 8043, 1983 WL 2430 (May 9, 1983), Anthony Phelps walked out onto a front porch where he had an exchange of words with an arriving Sherwood Thornton. Phelps asked Thornton to drop the knife he was holding and, upon receiving a negative reply, Phelps reached into his own rear pocket and pulled out a gun. Phelps shot Thornton who subsequently died. The trial court gave a self-defense instruction for the

murder charge (for which Phelps was found not guilty), but not for a weapons under disability offense. We determined that the denial of the second self-defense instruction was not error because "Phelps had physical possession of the firearm before the confrontation with Sherwood Thornton. His possession of the firearm was not the outgrowth of the alleged assault, and he was in violation of the applicable statute without reference to the issue of self-defense." *Id.* at *1. Accordingly, possession of a weapon before the incident giving rise to self-defense precludes the defense. *See also State v. Conwell*, 9th Dist. Summit No. 19482, 2000 WL 372310, *4 (April 12, 2000) ("Conwell's own testimony clearly showed that he purchased the shotgun far in advance of the events that occurred...."); *State v. Martz*, 163 Ohio App.3d 780, 2005-Ohio-5428, 840 N.E.2d 648, ¶ 41 (5th Dist.) ("We find that self-defense is not available as a defense to having weapons while under disability as a matter of law where an offender possessed the weapon prior to the incident where alleged self-defense arises.").

{¶ 36}  Conversely, in *State v. Foster*, 7th  Dist. Columbiana No. 81-C-27, 1982 WL 6168 (Aug. 4, 1982), the defendant's brother opened their door and was shot by Sam Allen. They struggled and the gun fell on the floor as Allen escaped. The defendant, Foster, who had not seen Allen, was awakened and learned that Allen had fled up the alley. The defendant picked up the gun from the floor and went outside to locate Allen. Foster was returning to the house when he was apprehended by the police. Foster argued that the trial court's instruction on self-defense was wrong because it included a duty to retreat and he argued he did not have any such duty in, or in the immediate vicinity of, his home. The court of appeals found no error with the instruction but determined the *Hardy* defense inapplicable anyway because Foster was never assaulted, never saw the assailant and was outside the house looking for him. According to that analysis,

continued possession of a weapon after the incident giving rise to self-defense precludes assertion of the defense. *See also State v. Link*, 10th Dist. Franklin No. 93AP-533, 1993 WL 540279, *4 (Dec. 28, 1993) (It was not plain error to fail to give a self-defense instruction because "a reasonable jury could have convicted Link of having a weapon while under a disability based upon his retention of the gun for a significant period of time after the need for self-defense ceased."). In my view, whether a defendant has possessed a firearm for an unreasonable amount of time before, or after, the self-defense event is an important element that should be included in a jury instruction and left for the jury to decide. The standard self-defense instruction does not contain that element.

{¶ 37} Circumstances can also arise where there may be justification for temporary possession of a firearm but the application of a traditional self-defense instruction becomes awkward or impossible. In *State v. Mick*, 6th Dist. Lucas No. L-11-1034, 2012-Ohio-3296, Mick and a friend, Collins, were working on the cage of Mick's aggressive and agitated dog, Sarge. When the dog was about to get loose in the vicinity of neighborhood children, Collins shot the dog several times. It lay motionless in the cage. They went inside. When they returned, Mick, who was under a firearm disability, also shot the dog with Collins' weapon. In a footnote of its opinion, the court of appeals explained that a *Hardy* defense would not be available because that variety of self-defense is personal and does not extend to third persons or for other purposes. *Id.* at fn 2. However, there should be allowance for the question as to whether a person prohibited from having a firearm would be justified in temporary possession or use of a firearm to kill a vicious animal which is attacking or about to attack another person. A self-defense instruction does not conveniently apply. Additionally, shouldn't a person with a firearm disability be

permitted to remove a firearm from a young child if no one else is present? And shouldn't that person be permitted to disarm one who is threatening suicide with a firearm? Those situations are not related to a claim of self-defense and a self-defense instruction would be inadequate.

{¶ 38} From Ohio case law on justification and self-defense, *see, e.g., State v. Williford*, 49 Ohio St.3d 247, 551 N.E.2d 1279 (1990), the patterned Ohio self-defense instruction, *Ohio Jury Instructions Section* 417.27, and from case law or instructions from other venues, *see, e.g., U.S. v. Moore*, 733 F.3d 171 (6th Cir. 2013), California Criminal Jury Instructions Nos. 3403 & 2514, I have cobbled together what I believe are the elements necessary for a jury to properly evaluate a justification defense for the temporary possession of a firearm by someone who is under a firearm disability. The conjunctive elements are that a defendant can be found not guilty of prohibited possession of a firearm if he proves by a preponderance of the evidence that 1) he acted in an emergency that he reasonably believed posed a threat of death or serious injury to himself or someone else; 2) he did not contribute to the cause of the threat; 3) the defendant actually believed the act of possession of the firearm was reasonably necessary to prevent the threatened harm; 4) no adequate legal alternative of avoiding the danger of injury was available; and 5) the defendant possessed the firearm temporarily, that is, for a period no longer than was reasonably necessary [to avoid the danger] [for his own defense].

. . . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck
Michele D. Phipps
Daniel A. Perry
Hon. Charles S. Wittenberg
(sitting for Judge Mary K. Huffman)