[Cite as *State v. Kyle*, 2020-Ohio-3281.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 108702 |
| v. | : | |
| JEWAN KYLE, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 11, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-638252-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carson Strang, Assistant Prosecuting Attorney, *for appellee.*

Brian R. McGraw, *for appellant.*

EILEEN T. GALLAGHER, A.J.:

{¶ 1} Defendant-appellant, Jewan Kyle ("Kyle"), appeals from his having weapons while under disability conviction following a jury trial. He raises the following assignment of error for review:

Kyle's conviction for having a weapon while under disability fails for sufficiency and is against the manifest weight of the evidence. Specifically, Kyle should have been acquitted of having a weapon while under disability because he possessed a firearm in self-defense.

{¶ 2} After careful review of the record and relevant case law, we affirm Kyle's conviction.

## I. Procedural and Factual History

{¶ 3} In March 2019, Kyle was named in a seven-count indictment, charging him with murder in violation of R.C. 2903.02(A), with one- and three-year firearm specifications; murder in violation of R.C. 2903.02(B), with one- and three-year firearm specifications; felonious assault in violation of R.C. 2903.11(A)(1), with one- and three-year firearm specifications; attempted murder in violation of R.C. 2923.02 and 2903.02(A), with one- and three-year firearm specifications; felonious assault in violation of R.C. 2903.11(A)(2), with one- and three-year firearm specifications; discharge of a firearm on or near a prohibited premises in violation of R.C. 2923.162(A)(3), with one- and three-year firearm specifications; and having weapons while under disability in violation of R.C. 2923.13(A)(2), with one- and three-year firearm specifications. The indictment stemmed from allegations that Kyle shot and killed Cedric Carter ("Carter") on November 29, 2017.

{¶ 4} The matter proceeded to a jury trial in May 2019. At trial, Officer Daniel Ziegler ("Officer Ziegler"), of the Cleveland Police Department, testified that during the early hours of November 29, 2017, he received a dispatch to respond to the Union Club bar, located in Cleveland, Ohio. Officer Ziegler was advised that a male was reported to have been shot. Upon arriving at the scene, Officer Ziegler

observed the victim, later identified as Carter, "[lying] in the street on his back." (Tr. 521.)

{¶ 5} Officer Ziegler testified that two individuals, Rayshawn Williams ("Williams") and Antwon Jones ("Jones"), were present at the scene. Initially suspicious of the men, Officer Ziegler and his partner performed a pat-down search and secured Williams and Jones for questioning. No weapons were discovered on Williams or Jones at that time. Officer Ziegler stated that Williams and Jones appeared to be intoxicated and "had trouble standing up, slurred speech, and glassy eyes." (Tr. 523.)

{¶ 6} According to Officer Ziegler, Jones expressed that he had just come out of the bar and did not witness the shooting. In contrast, Williams was "upset" and "was crying." (Tr. 523.) He was cooperative with the officers and provided a description of the shooter. In addition, Williams indicated that the shooter fled the scene in a black Porsche with Georgia license plates. Officer Ziegler testified that Williams and Jones were subsequently transported to the homicide unit for further questioning.

{¶ 7} Forensic pathologist, Daniel Galita, M.D. ("Dr. Galita"), testified that he was assigned to perform the autopsy on Carter in this matter. Dr. Galita stated that he performed an external examination of Carter's body and discovered an "entrance gunshot wound located on the left side of the face, on the left cheek." (Tr. 570.) Dr. Galita also discovered an "exit wound located on the right occipital skull in the back of the head on the right side." (Tr. *id.*) Dr. Galita explained that the

gunshot wound was instantaneously fatal. Accordingly, Dr. Galita opined with a reasonable degree of scientific certainty that Carter's official cause of death was "a gunshot wound on left face with skeletal and soft tissue injuries." (Tr. 581.) Carter's manner of death was classified as a "homicide," meaning "a human being killed by another human being." (Tr. *id.*)

{¶ 8} Thomas Ciula ("Ciula"), a forensic video specialist for the Cleveland Police Department, testified that he was assigned to collect relevant video evidence in this case. Ultimately, Ciula recovered surveillance video footage from three separate sources (1) the Union Club bar, (2) a nearby pawn shop, and (3) a nearby law firm. Ciula testified that he reviewed the video footage and determined which camera angles best captured the persons and areas of interest in the police investigation.

{¶ 9} Using the most relevant video footage retrieved from each surveillance source, Ciula formatted a single video file that followed the person of interest during the relevant time periods. The surveillance video footage, marked State's exhibit No. 3B, was played for the jury. Ciula testified that surveillance footage captured by the pawn shop shows the person of interest, later identified as Kyle, arriving at the Union Club bar in a black vehicle at 1:40:45 a.m. Kyle is seen exiting the driver's side of the vehicle and walking towards the Union Club bar. A second individual, later identified as Jones, is seen exiting the passenger's side of the black vehicle and accompanying Kyle into the bar. As Kyle and Jones enter the Union Club bar, the exhibit switches to the video footage captured by the bar's

interior surveillance cameras. The exhibit depicts the person of interests' movements inside the Union Club bar until he exits the bar at approximately 2:05 a.m.

{¶ 10} Ciula also compiled a video file, marked State's exhibit No. 3C, that followed the movements of Carter on the night of the shooting. The video depicts Carter inside the Union Club bar, where he is observed greeting and conversing with bar patrons, including Kyle and Jones. As the bar is closing for the evening, Carter is seen leaving the front entrance of the bar with his friend, Williams.

{¶ 11} The prosecution then played State's exhibit No. 3E, which depicts an altercation that transpired after Kyle, Jones, Williams, and Carter exited the Union Club bar. The video shows two individuals, later determined to be Kyle and Williams, engaging in a verbal and physical altercation near Kyle's vehicle at 2:09:27 a.m. Ciula testified that in the midst of the altercation, Kyle appeared to enter his vehicle before re-engaging with Williams. (Tr. 793.) All four men are seen on the video at 2:10:20 a.m. Although Ciula qualified that he could not be certain given the limitations of the video footage, he agreed with the prosecution's suggestion that Kyle "possibl[y]" entered the black vehicle a second time during the altercation. (Tr. 799.) While Kyle and Williams continue their argument near the driver's side area of the vehicle, Carter is seen shoving Jones near the rear of the vehicle at 2:10:42 a.m. Within seconds, Carter was shot in the head by Kyle at 2:10:45 a.m. Carter immediately fell to the ground. A second shot was fired in the direction of Williams

at 2:10:49 a.m. Thereafter, Kyle got into the black vehicle, without Jones, and fled the scene at 2:11:01 a.m.

{¶ 12} Detective Arthur Echols ("Det. Echols"), of the Cleveland Police Department, testified that he was assigned to investigate Carter's death. In the course of his investigation, Det. Echols interviewed Williams and Jones, and learned that the suspect's nickname was "Beeka." Ultimately, Det. Echols received "information that Beeka might be Jewan Kyle." (Tr. 830.) Det. Echols obtained a photograph of Kyle from a law enforcement database, and presented the photograph to Williams in an effort to confirm the shooter's identity. Det. Echols was not permitted to divulge the specific information he gathered from Williams during this second interview. However, Det. Echols confirmed that he obtained a warrant for Kyle's arrest following his conversation with Williams. Kyle was eventually located and arrested in February 2018. Det. Echols testified that, since his initial conversations with Williams and Jones, they have not been cooperative with the investigation and have failed to appear for court proceedings despite having warrants issued for their arrest.

{¶ 13} Det. Echols also had the opportunity to review the relevant surveillance video footage obtained in this case. As the surveillance video footage played for the jury, Det. Echols identified Kyle, Jones, Williams, and Carter, and described their movements inside the bar and during the subsequent altercation outside the bar. Det. Echols confirmed that the surveillance footage captured Carter

being shot. He further reiterated that Kyle fled the scene in the black Porsche after the shooting occurred.

{¶ 14} Following the state's case, Kyle testified in his own behalf. Kyle testified that he grew up in Cleveland, Ohio, and has known Jones, Williams, and Carter since he was 12 years old. Kyle stated that he dropped out of high school and became involved in the "drug culture," leading to "seven or eight" drug convictions. Kyle testified that Carter and Williams also became involved in drug trafficking and commonly carried firearms.

{¶ 15} Regarding the night of the shooting, Kyle testified that he borrowed a friend's black Porsche, and picked up Jones before driving to the Union Club bar. Kyle stated that when he parked the vehicle, Jones placed his gun "on the side of the seat" before exiting the vehicle to go inside the bar. (Tr. 939.) Once inside the Union Club bar, Kyle observed Williams and Carter. He confirmed that he hugged Carter because "that's how I embrace my friends." (Tr. 939.)

{¶ 16} According to Kyle, Jones and Carter also embraced each other, and "began reminiscing about a physical altercation that they had before." (Tr. 941.) Kyle testified that he could sense there was "some tension" between Jones and Carter. (Tr. 941.) As Jones and Carter's conversation became more aggressive, Kyle became increasingly concerned because Jones and Carter were both highly intoxicated, and Carter was in possession of a firearm. Kyle explained that he knew Carter was in possession of a firearm based on statements Carter was making to Jones during their conversation. (Tr. 942.)

{¶ 17} As the bar was closing, Kyle exited the front entrance and was suddenly confronted by Williams. Kyle testified that he was not expecting a confrontation with Williams because he did not interact with Williams inside the bar that evening. Kyle indicated that the confrontation stemmed from statements he had made to Carter about Williams owing Jones money. Kyle testified that Williams was "angry, aggressive * * * and flashed his gun, coming towards me." (Tr. 950.) Williams also used threatening language. Kyle stated that he was nervous and believed his life was in danger. Kyle testified that Carter was encouraging Williams during the altercation, and also made threatening statements while in possession of a firearm.

{¶ 18} When Williams displayed his gun, Kyle "backed up with his hands up," and urged Williams to calm down and "let it go." (Tr. 962.) Kyle stated that he then made his way towards his vehicle in an attempt to leave the scene. Once at his vehicle, however, Kyle did not feel free to leave because Williams followed him and continued to make threatening statements. (Tr. 958.) Eventually, Kyle was able to reach inside the vehicle "for the gun that [Jones] had on the side of the seat." (Tr. 958.) Kyle stated that he put the gun into his sweatshirt pocket and "hurried back out of the car so [Williams] wouldn't make an attempt to shoot me." (Tr. *id.*)

{¶ 19} When the confrontation between Kyle and Williams escalated, Jones got in the middle of the two men to act as a "peacemaker." (Tr. 961.) During this interaction, Carter shoved Jones. Kyle testified that after Carter pushed Jones, Carter appeared to reach for a gun. Believing Carter intended to shoot himself and

Jones, Kyle stepped forward and fired one shot, shooting Carter in the head. He then fired a second shot "towards the ground" near Williams. (Tr. 963.) Once he felt he could leave safely, Kyle got into his vehicle with the gun and fled the scene without Jones.

{¶ 20} At the conclusion of trial, the court determined that it was appropriate to provide the jury with a self-defense instruction on each count of the indictment. (Tr. 1066.) Following jury deliberations, Kyle was found guilty of having weapons while under disability and the attached firearm specifications, as charged in Count 7 of the indictment. However, Kyle was found not guilty of all remaining offenses.

{¶ 21} Prior to sentencing, Kyle filed a motion to set aside the verdict on the firearm specification attached to the having weapons while under disability conviction pursuant to R.C. 2929.14(B)(1)(e). The trial court granted the motion, stating:

> In consideration of the defendant's motion and arguments presented, defendant's motion is granted. Court grants acquittal as to the 1 year and 3 year firearm specifications in Count 7. Defendant to be sentenced on Count 7 — HWWUD without firearm specifications.

{¶ 22} At sentencing, the trial court imposed a 36-month prison term.

{¶ 23} Kyle now appeals from his conviction.

## II. Law and Analysis

{¶ 24} In his sole assignment of error, Kyle argues his having weapons while under disability conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. Kyle contends that he should have been acquitted of the charge because he only possessed a firearm to defend himself and Jones.

{¶ 25} The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 26} It is well established that the elements of an offense may be proven by direct evidence, circumstantial evidence, or both. *See State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). Direct evidence exists when "a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish." *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Circumstantial evidence, on the other hand, is evidence that requires "the drawing of inferences that are reasonably permitted by the evidence." *Id. See also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("[c]ircumstantial evidence is the proof of facts by direct evidence from which the

trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind.").

**{¶ 27}** Circumstantial and direct evidence are of equal evidentiary value. *State v. Santiago*, 8th Dist. Cuyahoga No. 95333, 2011-Ohio-1691, ¶ 12. "Although there are obvious differences between direct and circumstantial evidence, those differences are irrelevant to the probative value of the evidence." *Cassano* at ¶ 13, citing *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). In some cases, circumstantial evidence may be "'more certain, satisfying and persuasive than direct evidence.'" *State v. Lott*, 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990), quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

**{¶ 28}** A manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "A conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 47, quoting *Thompkins* at 387.

**{¶ 29}** Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20, quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709, 4 (Aug. 22, 1997). "The jury may take note of any inconsistencies and resolve them accordingly, 'believ[ing] all, part, or none of a witness's testimony.'" *State v. Burks*, 8th Dist. Cuyahoga No. 106639, 2018-Ohio-4777, ¶ 48, quoting *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶ 30}** In this case, Kyle was found guilty of having weapons while under disability in violation of R.C. 2923.13(A)(2). The statute provides, in relevant part:

> [u]nless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.

R.C. 2923.13(A)(2).

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶ 31} On appeal, Kyle does not dispute that he was under disability based on his prior felony drug conviction in Cuyahoga C.P. No. CR-14-583968. (Tr. 850-851; 934.) Rather, Kyle asserts that his having weapons while under disability conviction must be reversed because he only acquired, had, or used the subject firearm to act in self-defense.

{¶ 32} In support of his position, Kyle relies on this court's prior decision in *State v. Hardy*, 60 Ohio App.2d 325, 330, 397 N.E.2d 773 (8th Dist.1978). In *Hardy*, the defendant, while under disability, was employed in a beverage store, where he was the victim of a robbery. In order to stop the armed robber, the defendant seized a rifle from the counter, to which all employees had access, and shot the robber. *Id.* at 325-326. This court found that prior to firing the gun, the defendant lacked the type of possession of the gun contemplated by the disability statute. *Id.* at 328. "A legitimate act of self-defense is much more a mere reflex action than one committed voluntarily." *Id.* at 329.

{¶ 33} This "self-defense exception," is applied in very limited circumstances:

> The so-called self-defense exception to the charge of carrying a weapon while under disability is an extremely narrow exception. Implicit in this court's decision in *Hardy* is the recognition that all individuals, including those under disability, have a right to defend themselves against an immediate threat of deadly force, provided, however, they did not knowingly acquire, have, carry or use the firearm previously.

*State v. Fryer*, 90 Ohio App.3d 37, 45, 627 N.E.2d 1065 (8th Dist.1993); *State v. Martin*, 8th Dist. Cuyahoga No. 63153, 1993 Ohio App. LEXIS 4660 (Sept. 30, 1993) (finding the trial court did not err by refusing to give the self-defense charge for the disability count where the defendant was under no immediate threat of death or great bodily harm).

{¶ 34} This court has recognized that "the self-defense exception does not apply in circumstances where the defendant had possession of the weapon prior to the incident giving rise to the charges or in anticipation of a confrontation." *State v. Armstrong*, 8th Dist. Cuyahoga No. 103423, 2016-Ohio-2842, ¶ 25, citing *State v. Hawthorne*, 8th Dist. Cuyahoga No. 89345, 2008-Ohio-1815 (declining to apply the *Hardy* exception where the defendant knowingly possessed the weapon prior to the incident); *State v. Gripper*, 10th Dist. Franklin No. 12AP-396, 2013-Ohio-2740, ¶ 26 (conviction for having weapons while under disability upheld where evidence showed the defendant obtained the gun "in anticipation of the confrontation, not in response to the confrontation"); *State v. Martz*, 163 Ohio App.3d 780, 790, 2005-Ohio-5428, 840 N.E.2d 648 (5th Dist.) (finding defendant's "mere possession" of the weapon in anticipation of a possible confrontation sufficient evidence to support the conviction of having weapons while under disability); *State v. Escoto*, 10th Dist.

Franklin No. 98AP-481, 1999 Ohio App. LEXIS 512 (Feb. 18, 1999) (*Hardy* exception not applicable where defendant brought the gun into the situation).

{¶ 35} Thus, the relevant inquiry in this case is not whether Kyle violated R.C. 2923.13(A)(2) by possessing a firearm at the moment he acted in self-defense. Rather, for the purposes of this appeal, the focus is whether Kyle possessed the firearm prior to, or in anticipation of, the altercation with Williams and Carter.

{¶ 36} To "have" a firearm within the meaning of R.C. 2923.13(A), a person must have actual or constructive possession of it. *State v. Davis*, 8th Dist. Cuyahoga No. 104221, 2016-Ohio-7964, ¶ 13, citing *State v. Adams*, 8th Dist. Cuyahoga No. 93513, 2010-Ohio-4478, ¶ 19.

{¶ 37} Actual possession is ownership or physical control. *State v. Jones*, 8th Dist. Cuyahoga No. 101311, 2015-Ohio-1818, ¶ 46. In contrast, constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his or her immediate physical possession. *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976); *State v. Washington*, 8th Dist. Cuyahoga Nos. 98882 and 98883, 2013-Ohio-2904, ¶ 22. "[C]ircumstantial evidence is sufficient to support the element of constructive possession." *State v. Brooks*, 8th Dist. Cuyahoga No. 94978, 2011-Ohio-1679, ¶ 17. Thus,

> if the evidence demonstrates that the defendant was in close proximity to the contraband, such that the defendant was able to exercise dominion or control over the contraband, this constitutes circumstantial evidence that the defendant was in constructive possession of the items.

*State v. Walker*, 8th Dist. Cuyahoga No. 106378, 2018-Ohio-3588, ¶ 9, quoting *Brooks* at *id.* Furthermore, a person may knowingly possess or control property belonging to another; the state need not establish ownership to prove constructive possession. *See State v. Robinson*, 8th Dist. Cuyahoga No. 90751, 2008-Ohio-5580, ¶ 84.

{¶ 38} However, "[c]onstructive possession cannot be inferred by a person's mere presence in the vicinity of contraband" or "mere access" to contraband or to the area in which contraband is found. *State v. Jansen*, 8th Dist. Cuyahoga No. 73940, 1999 Ohio App. LEXIS 2060, 8 (May 6, 1999); *State v. Burney*, 10th Dist. Franklin No. 11AP-1036, 2012-Ohio-3974, ¶ 22-24, 32, quoting *State v. Hall*, 8th Dist. Cuyahoga No. 66206, 1994 Ohio App. LEXIS 5391, 5 (Dec. 1, 1994). It must be shown that the person was "conscious of the presence of the object." *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982); *Washington* at ¶ 22; *State v. Bray*, 8th Dist. Cuyahoga No. 92619, 2009-Ohio-6461, ¶ 21.

{¶ 39} Viewing the evidence in a light most favorable to the prosecution, we find the state presented sufficient evidence that Kyle, while under disability, did knowingly acquire, have, carry or use a firearm prior to the altercation that required him to use the firearm in self-defense. The evidence introduced at trial demonstrated that Kyle arrived at the Union Club bar in a black vehicle and exited the driver's side door of the vehicle before walking into the bar with Jones. Kyle subsequently became engaged in a verbal and physical dispute with Williams

outside the bar, near his black vehicle. In the midst of the confrontation, Kyle reached into the driver's side area of his vehicle, and immediately retrieved a gun.

{¶ 40} In contrast to the circumstances presented in *Hardy*, we find Kyle had more than mere physical access to the gun. Rather, the state presented sufficient circumstantial evidence that Kyle had constructive possession of the firearm when he arrived at the Union Club bar in his vehicle on November 29, 2017. There is no dispute that Kyle arrived to the bar with a loaded gun inside his vehicle. Moreover, there is no indication that the firearm was moved between the time Kyle parked his vehicle outside the Union Club bar and the moment he picked up the firearm to use in self-defense. From the surveillance video footage introduced by the state, it is clear that when Kyle leaned into his vehicle during the confrontation with Williams, he understood that a firearm was within reach. From this evidence, a rational trier of fact could conclude that when Kyle parked his vehicle outside the Union Club bar, he was consciously aware of the firearm's presence inside the vehicle, and that the firearm was placed in a location that was readily accessible and in close proximity to the driver of the vehicle.

{¶ 41} Under these circumstances, we find the state presented sufficient evidence that, prior to his act of self-defense, Kyle had access to a weapon and had the ability to control its use. *See State v. Long*, 8th Dist. Cuyahoga No. 85754, 2005-Ohio-5344, ¶ 17; *State v. Tolliver*, 8th Dist. Cuyahoga No. 56990, 1990 Ohio App. LEXIS 1915, 5 (May 17, 1990) ("A trier of fact may reasonably infer possession where the accused is in close proximity to the firearm as an occupant of a motor vehicle."),

citing *State v. Moncrief,* 69 Ohio App.2d 51, 431 N.E.2d 336 (8th Dist.1980). Whether Kyle did, or did not, own the firearm is of no consequence. *State v. Davis*, 8th Dist. Cuyahoga No. 104221, 2016-Ohio-7964, ¶ 20. Accordingly, we find Kyle's having weapons while under disability conviction was supported by sufficient evidence.

{¶ 42} Moreover, weighing the strength and credibility of the evidence presented and the inferences to be reasonably drawn therefrom, we find Kyle's conviction is not against the manifest weight of the evidence. Contrary to Kyle's position on appeal, the jury's determination that there was credible evidence supporting his having weapons while under disability conviction is not inconsistent with its verdict on the remaining charges of the indictment. *See State v. Brown,* 8th Dist. Cuyahoga No. 89754, 2008-Ohio-1722 (rejecting argument that conviction on bench-tried weapon under disability count was overridden by jury verdicts of not guilty on attempted murder and felonious assault); *State v. Douthitt*, 10th Dist. Franklin No. 18AP-547, 2019-Ohio-2528, ¶ 10 ("[Defendant]'s contention that the jury verdicts of acquittal precluded his conviction for having a weapon while under disability is not well-taken."); *State v. Smith*, 10th Dist. Franklin No. 14AP-33, 2014-Ohio-5443, ¶ 27 (affirming trial court judgment of guilt on weapon count despite jury verdicts of not guilty on aggravated burglary, aggravated robbery, and kidnapping).

{¶ 43} As discussed, the evidence supporting Kyle's having weapons while under disability conviction relies on circumstances that are independent of the

shooting, and pertain to Kyle's conduct prior to the act of self-defense. The jury was free to believe Kyle's testimony that he acted in self-defense at the time he shot Carter and attempted to shoot Williams, while simultaneously rejecting his testimony that he did not possess the firearm prior to using it in self-defense. As stated, the state presented credible evidence that, while under disability, Kyle had constructive possession of the firearm at the time he arrived at the Union Club bar on November 29, 2017. Despite Kyle's assertion that the firearm belonged to Jones, his own testimony at trial corroborated the state's contention that the gun retrieved during the altercation was located inside a vehicle that was under Kyle's control, in an area of the vehicle that was readily accessible to the driver of the vehicle, and that Kyle was consciously aware of the firearm's presence inside the vehicle.

{¶ 44} Under the foregoing circumstances, we are unable to conclude that the jury lost its way and created such a manifest miscarriage of justice that a new trial should be ordered. As the factfinder, the jury was entitled to reconcile any differences and inconsistencies in the testimony and determine that the manifest weight of the evidence supported a finding of guilt. *See DeHass*, 10 Ohio St.2d at 231, 227 N.E.2d 212. Kyle's sole assignment of error is overruled.

{¶ 45} Finally, although not raised in an assignment of error pursuant to App.R. 16, we briefly reject Kyle's suggestion that the trial court was required to "explain how the concepts of self-defense might apply differently to 'action' crimes (like murder) versus 'status' crimes (like having weapons while under disability)." Kyle appears to argue that, under authority of *Hardy*, the trial court should have

instructed the jury that a person under a disability may possess a weapon while acting in self-defense, provided he did not knowingly acquire it previously.

{¶ 46} In this case, the trial court's self-defense instruction was consistent with the language set forth under R.C. 2901.05 and Ohio Jury Instructions, CR Sections 421.21 and 421.211 (Rev. Apr. 13, 2019). (Tr. 1123-1125.) Kyle did not object to the self-defense instruction that was provided to the jury on each charge of the indictment. Crim.R. 30. In addition, Kyle has cited no statutory provisions or case law to suggest the trial court erred by failing to provide an alternative or modified self-defense instruction on the having weapons while under disability offense. Finally, given our discussion of the evidence supporting Kyle's conviction, there is no basis to suggest the outcome of the trial clearly would have been different had the jury been given a more specific self-defense instruction on the having weapons while under disability offense. Under these circumstances, we are unable to conclude that the trial court's failure to so instruct the jury rose to the level of plain error. As such, we find no merit to Kyle's contention that "the court erred in its instruction by failing to explain how self-defense would apply to this specific crime."

{¶ 47} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

conviction having been affirmed, any bail pending is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
MICHELLE J. SHEEHAN, J., CONCUR