[Cite as *State v. Courtney*, 2026-Ohio-676.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                          :        APPEAL NO.    C-250172
                                                 TRIAL NO.     B-2400635
      Plaintiff-Appellee,          :

  vs.                                   :
                                                 *JUDGMENT ENTRY*
DEVON COURTNEY,                         :

      Defendant-Appellant.         :


This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 2/27/2026 per order of the court.**


**By:**_____
      **Administrative Judge**

[Cite as *State v. Courtney*, 2026-Ohio-676.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250172 |
| | | TRIAL NO. B-2400635 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| DEVON COURTNEY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: February 27, 2026

*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michael J. Trapp*, for Defendant-Appellant.

**Bock, Judge.**

{¶1}  In this appeal, defendant-appellant Devon Courtney challenges his conviction for having a weapon while under a disability in violation of R.C. 2923.13(A)(2). Courtney asserts that the State's evidence is insufficient to prove that he had the firearm before he used it in self-defense against an intruder. Likewise, he argues that his conviction is contrary to the manifest weight of the evidence.

{¶2}  We disagree. Sufficient evidence supports Courtney's conviction because a rational juror could infer that Courtney possessed the firearm before he used it in self-defense based on eyewitness testimony that Courtney fled carrying "his" firearm, a statement to a 9-1-1 dispatcher describing him fleeing with "his" firearm, and the absence of any witness seeing the firearm beforehand.

{¶3}  Second, Courtney's conviction is not contrary to the weight of the evidence simply because the jury disbelieved his testimony that the firearm belonged to a friend. The jury was entitled to reject Courtney's explanation when other eyewitness testimony contradicted separate portions of Courtney's account.

{¶4}  We overrule the assignments of error and affirm the conviction.

## I.  Factual and Procedural History

{¶5}   In November 2023, Courtney shot and killed M.B. at a party. The State charged Courtney with murder, felonious assault, and having a weapon while under disability. Before trial, Courtney stipulated that he "was under a disability" in November 2023.

### A.  *Courtney's trial*

{¶6}  Courtney attended a party hosted by his friend, R. Keeling, in a small Airbnb apartment in Cincinnati in November 2023. Bodycam footage and a diagram

3

of the apartment show that the front door to the apartment opened to a kitchenette on the right, a set of bunk beds on the left, and a couch at the far end of the apartment.

{¶7} Courtney and his childhood friend, J. Howard, were the first guests to arrive at the party. There, Courtney and Howard met Keeling and his girlfriend, K. Smith. Later, Smith's cousin, K. Henderson, arrived with his girlfriend.

{¶8} Smith and M.B. had been romantically involved for six years. And Henderson knew M.B. through Smith. Before the party, Keeling and M.B. exchanged threatening text messages.

{¶9} Sometime around 7:30 p.m., the partygoers heard banging on the front door. M.B. entered the apartment and, apparently mistaking Henderson for Keeling, attacked Henderson. During the attack, Courtney shot M.B. Everyone fled from the apartment except for Smith, who stayed with M.B. and called 9-1-1.

1. *State witnesses described the party, the shooting, and the aftermath*

{¶10} Howard did not see a firearm at any point before the shooting and did not know if Keeling had a firearm in the apartment. Howard recalled sitting on the couch at the opposite end of the apartment from the front door when he heard someone "banging" on the door. According to Howard, M.B. "broke through the door" and "attacked" one of the partygoers, shouting "I'm gonna kill you, bitch. I'm gonna kill you, bitch." Howard testified that Courtney was standing near the bunkbeds, a few feet from the door. Howard heard gunshots, ducked behind the couch, and then fled from the apartment with the others.

{¶11} Henderson testified that he was in the kitchen near the door when he heard "a bang" over the music, and then the sound of broken glass. When Henderson opened the door, M.B. "threw a punch" and attacked Henderson. As M.B. and Henderson wrestled, Henderson heard gunshots. Then, "[e]verybody started to grab

4

their stuff and run out the door." According to Henderson, Courtney carried "his gun" as he fled from the apartment and no other partygoer had a firearm.

{¶12} Smith testified that M.B. was not invited to the party and "wasn't even supposed to know where [Smith] was." She was in the kitchen, near the front door, when she heard a "boom" at the door. Everyone at the party "tensed up." At that point, Smith answered a call from M.B.—she could hear the music from the party in the "background" of the call. According to Smith, both Henderson and Keeling "ran to the door." After someone opened the door, M.B. "came flying through the door." Smith froze when Courtney shot M.B. Smith called 9-1-1 and told the dispatcher that the shooter took "his" firearm with him.

2. *Courtney asserted self-defense*

{¶13} Courtney admitted that he had a weapon while he was under a disability but he denied bringing a firearm to the party.

{¶14} Courtney recalled standing near the bunkbeds at the Airbnb with Keeling, who "picked up his coat to get some cigars, and there's a gun under his coat on the [bottom] bunk bed." Keeling placed "his coat back over the gun." When Courtney asked Keeling if he had the firearm for protection, Keeling explained that M.B. had found Keeling's phone number and M.B. "said he was going to do something to [Keeling]."

{¶15} Courtney heard the "loud banging" at the door. As Keeling, Smith, and Henderson's girlfriend gravitated to the door, Courtney moved to the bunkbeds, "towards the gun." When M.B. entered the apartment and "said, 'I'm going to kill you,'" Courtney believed "it was a home invasion."

{¶16} Courtney testified that, immediately after he shot M.B., he felt stunned, dumbfounded, and "awestruck." Courtney recalled throwing the firearm onto

5

Keeling's coat on the bunkbed and fleeing from the apartment with Howard. Courtney agreed that the bodycam footage showed no firearm on the bunkbeds, but he pointed out that Keeling's coat was also missing from the bunkbeds in the bodycam footage.

{¶17} Security footage from the apartment stairwell showed Courtney leaving the apartment building. When asked whether the footage showed him holding a firearm in the stairwell, Courtney insisted it showed his hand in his pant pocket.

## B. *Verdict and sentencing*

{¶18} The jury found Courtney not guilty of murder and felonious assault, but guilty of having a weapon while under a disability. The trial court denied Courtney's Crim.R. 29 motion for an acquittal and sentenced Courtney to 36 months in prison.

## II. Analysis

{¶19} On appeal, Courtney raises two assignments of error challenging the sufficiency and manifest weight of the evidence. Specifically, he disputes the State's proof that he possessed the firearm before using it in self-defense.

## A. *The evidence was sufficient to support Courtney's conviction*

{¶20} Courtney's first assignment of error asserts that the evidence was insufficient to support his conviction. Due process guarantees "that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). A sufficiency-of-the-evidence argument tests whether the State produced evidence sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. *State v. Brown*, 2025-Ohio-2804, ¶ 17, quoting *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *State v. Jenks,* 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. In doing so, we view the evidence in the State's favor and determine if

a rational factfinder could have found that the State proved each element of the crime beyond a reasonable doubt. *Id.*, quoting *State v. Dean*, 2015-Ohio-4347, ¶ 150, quoting *Jenks* at paragraph two of the syllabus.

1. *Ohio's self-defense law*

**{¶21}** In any criminal prosecution, the State carries the burden to produce sufficient evidence of each element of a criminal offense beyond a reasonable doubt. *State v. Wilks*, 2018-Ohio-1562, ¶ 122. But "an affirmative defense is not an element of a crime." *State v. Messenger*, 2022-Ohio-4562, ¶ 24.

**{¶22}** In Ohio, self-defense is an affirmative defense that justifies "'admitted conduct.'" *State v. Martin*, 21 Ohio St.3d 91, 94 (1986), quoting *State v. Poole*, 33 Ohio St.2d 18, 19 (1973). Defendants invoking self-defense admit that their conduct met every element of the charged offense and then "rel[y] on independent facts or circumstances [to] exempt [them] from liability." *Id.* Moreover, the statutory elements of an offense "and the existence of self-defense are separate issues." *Id.*

**{¶23}** A self-defense claim places upon the defendant "the burden of producing legally sufficient evidence" on each self-defense element. *Messenger* at ¶ 24. A defendant may use deadly force in self-defense if the defendant (1) was not at fault for giving rise to the situation; (2) genuinely believed that he was in imminent danger of death or great bodily harm and that the only way to escape that danger was by use of force; and (3) did not violate a duty to retreat. *Id.* at ¶ 14. Once the defendant meets this burden, the burden shifts to the State to disprove at least one of these elements beyond a reasonable doubt. R.C. 2901.05(B)(1); *see Messenger* at ¶ 26.

**{¶24}** Courtney was acquitted of the murder and felonious-assault charges, so we presume that the jury found that Courtney satisfied his burden and the State failed to disprove an element of his self-defense claim.

2. *Self-defense may justify using or having a weapon while under a disability*

{**¶25**}  Courtney was convicted of having a weapon while under a disability in violation of R.C. 2923.13(A)(2), which prohibits a person under a "legal disability" from knowingly acquiring, having, carrying, or using a firearm. Simply put, Ohio's weapon-under-disability statute permanently "disarm[s] those who have committed violent, felony offenses." *State v. King*, 2024-Ohio-4585, ¶ 22 (8th Dist.).

{**¶26**}  For the past half century, Ohio has recognized that a person under a legal disability may use a firearm in self-defense. *See State v. Hardy*, 60 Ohio App.2d 325, 330 (8th Dist. 1978). Citing the constitutional right to self-defense, the *Hardy* court held that "the affirmative defense of self-defense must be available to [a] defendant" accused of having a weapon while under a disability in violation of R.C. 2923.13. *Id.* at 330. After all, R.C. 2923.13 prohibits "knowingly" using a firearm while under a disability and "[a] legitimate act of self-defense is much more a mere reflex action than one committed voluntarily." *Id.* at 329. So, a person under a disability may use a firearm "only for the brief period necessary to deflect an immediate, overt physical threat from another person with a deadly weapon." *State v. Jackson,* 2002-Ohio-4705, ¶ 17 (12th Dist.), citing *Hardy* at 328-330.

{**¶27**}  But self-defense justifies the use of a firearm by a person with a legal disability in "very limited circumstances." *State v. Kyle*, 2020-Ohio-3281, ¶ 33 (8th Dist.); *see State v. Douthitt*, 2019-Ohio-2528, ¶ 13 (10th Dist.); *see also State v. Fryer*, 90 Ohio App.3d 37, 45 (8th Dist. 1993). The exception applies only when the person acting in self-defense "did not knowingly acquire, have, carry or use a firearm previously." *Hardy* at 329. In Ohio, the self-defense exception to having a weapon while under a disability "'does not apply in circumstances where the defendant had possession of the weapon prior to the incident giving rise to the charges or in

anticipation of a confrontation.'" *Kyle* at ¶ 34, quoting *State v. Armstrong*, 2016-Ohio-2842, ¶ 25 (8th Dist.).

3. *Ohio courts are split on whether to review disability-based self-defense claims for sufficient evidence*

**{¶28}** In appeals considering self-defense claims raised as a defense to a having-a-weapon-while-under-a-disability conviction, several Ohio appellate courts review the sufficiency of the State's evidence proving that the defendant had the firearm before using it in self-defense. *See State v. Day*, 2025-Ohio-5625, ¶ 50 (8th Dist.); *see also Douthitt* at ¶ 14; *Armstrong*, 2016-Ohio-2842, at ¶ 29 (8th Dist.); *State v. Martz*, 2005-Ohio-5428, ¶ 43 (5th Dist.). Meaning, courts ask whether the State satisfied its burden of introducing evidence that the defendant had the firearm before he used it in self-defense. *See State v. Gibson*, 2023-Ohio-1640, ¶ 8 (1st Dist.).

**{¶29}** But, consistent with R.C. 2901.05(B)(1), other Ohio courts reviewing self-defense claims for R.C. 2923.13 convictions have held that the reviewing court must conduct a manifest-weight-of-the-evidence review, rather than sufficiency. *State v. Hale*, 2019-Ohio-3276, ¶ 87 (8th Dist.); *see State v. Conwell*, 2000 Ohio App. LEXIS 1592, *6 (9th Dist. Apr. 12, 2000) ("He does not attack the evidence supporting any of the elements of the offense; rather, he argues that he proved that he acted in self-defense.").

**{¶30}** Both parties argued that this Court should conduct a review for sufficiency. So we assume, without deciding, that a sufficiency standard of review applies to Courtney's claim of self-defense to his weapons-under-disability conviction.

4. *Circumstantial evidence established that Courtney possessed the firearm before the shooting*

**{¶31}** The parties dispute whether the State's evidence was sufficient to prove that Courtney had the firearm before he shot M.B. in self-defense. For weapons-under-

9

disability charges, "having" a firearm means that the defendant "'actually or constructively possesse[d] it.'" *State v. Williams*, 2011-Ohio-6267, ¶ 14 (1st Dist.), quoting *State v. English*, 2010-Ohio-1759, ¶ 31 (1st Dist.). "Actual possession" means "'ownership and, or, physical control.'" *State v. Smead*, 2010-Ohio-4462, ¶ 19 (9th Dist.), quoting *Hardy*, 60 Ohio App.2d at 327 (8th Dist. 1978).

{¶32} Courtney argues that the State's eyewitnesses did not testify that they saw Courtney in possession of the firearm before he shot M.B. in self-defense. Eyewitness testimony is one form of direct evidence. *City of Cleveland v. Hasan*, 2013-Ohio-820, ¶ 8 (8th Dist.), citing *State v. Evans*, 2012-Ohio-1562, ¶ 37 (4th Dist.).

{¶33} But the State may prove elements of an offense beyond a reasonable doubt through circumstantial evidence. *State v. Thomas,* 2022-Ohio-2218, ¶ 7 (1st Dist.). Circumstantial evidence is ""proof of facts or circumstances by direct evidence from which [the factfinder] may reasonably infer other related or connected facts that naturally flow according to the common experience of people.''" *State v. Barnthouse*, 2019-Ohio-5209, ¶ 16 (1st Dist.), quoting *State v. Shabazz*, 2016-Ohio-1055, ¶ 18, quoting *Ohio Jury Instructions*, CR § 409.01(4) (Rev. Aug. 17, 2011). Circumstantial evidence and direct evidence are equally probative. *State v. Orr*, 2014-Ohio-4680, ¶ 60 (8th Dist.). And in some cases, circumstantial evidence can ""'be more certain, satisfying and persuasive than direct evidence.''" *In re A.R.*, 2025-Ohio-1160, ¶ 25 (1st Dist.), quoting *Orr* at ¶ 60, quoting *State v. Lott*, 51 Ohio St.3d 160, 167 (1990), quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960).

{¶34} Here, a reasonable juror could infer that Courtney knowingly acquired, had, or carried the firearm before M.B. entered the residence. During the 9-1-1 call, Smith told the dispatcher that the shooter—Courtney—left with "his" gun. Likewise, Henderson testified that Courtney fled with "his" gun. And neither Henderson nor

Howard saw a gun in the apartment before the shooting. Viewing this evidence in a light most favorable to the State, we hold that a reasonable trier of fact could infer that Courtney acquired, had, or carried the firearm before he shot M.B.

**{¶35}** We overrule the first assignment of error.

### B. *Courtney's conviction is not against the weight of the evidence*

**{¶36}** In his second assignment of error, Courtney argues that his conviction is contrary to the weight of the evidence proving that he did not have the firearm before shooting M.B. in self-defense.

**{¶37}** Courtney, by asserting that his conviction is contrary to the manifest weight of the evidence, argues that the State failed to disprove an element of self-defense. *State v. Sawyer*, 2025-Ohio-5834, ¶ 28 (1st Dist.). A manifest-weight review requires us to independently review the record, consider the witnesses' credibility, and weigh the evidence. *State v. Snyder*, 2025-Ohio-4444, ¶ 255 (1st Dist.). We will not reverse a conviction as against the manifest weight of the evidence and order a new trial unless we determined that the trier of fact "clearly lost its way in resolving conflicts in the evidence and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Nichols,* 2025-Ohio-1515, ¶ 18 (1st Dist.), quoting *State v. Sorrels*, 71 Ohio App.3d 162, 166 (1st Dist. 1991).

**{¶38}** While we must consider the witnesses' credibility, we generally defer to factfinders' credibility determinations as they are best suited to judge witness credibility and how to weigh the evidence. *Id.* at ¶ 27. And factfinders, faced with conflicting accounts, may "'believe or disbelieve all or any of the testimony.'" *State v. Gatewood*, 2021-Ohio-3325, ¶ 69 (1st Dist.), quoting *State v. Shine-Johnson*, 2018-Ohio-3347, ¶ 65 (10th Dist.).

11

{¶39} Courtney argues that the evidence proves he shot M.B. in self-defense. In response, the State maintains that the jury could have believed simultaneously that Courtney shot M.B. in self-defense and that Courtney possessed the gun before using it in self-defense. We agree with the State. The crux of Courtney's second assignment of error is whether the weight of evidence proves that Courtney had the firearm before shooting M.B.

{¶40} Courtney insists that his account of using Keeling's firearm to shoot M.B. in self-defense is uncontradicted. Courtney testified that Keeling revealed the firearm to Courtney early in the night, and he only picked up the firearm from the bunkbed after M.B. entered the apartment and attacked Henderson. Courtney testified that he returned the firearm to the bunkbed and fled from the apartment.

{¶41} But Smith's statement to the 9-1-1 dispatcher and Henderson's trial testimony both contradict Courtney's account. Both Smith and Henderson testified that Courtney fled with "his" firearm. A rational juror could have believed Smith's and Henderson's statements and disbelieved Courtney's account.

{¶42} In sum, we cannot say that the jury lost its way and created a manifest injustice when it convicted Courtney of having a weapon under disability. We overrule the second assignment of error.

### III. Conclusion

{¶43} We overrule both assignments of error and affirm the trial court's judgment.

Judgment affirmed.

ZAYAS, P.J., and CROUSE, J., concur.

12