[Cite as *State v. Douthitt*, 2019-Ohio-2528.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 18AP-547 |
| v. | : | (C.P.C. No. 17CR-2903) |
| Devin L. Douthitt, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 25, 2019

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Michael P. Walton,* for appellee.

**On brief:** *Wolfe Law Group, LLC,* and *Stephen T. Wolfe,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} Defendant-appellant Devin L. Douthitt chose to have different criminal charges against him decided by different finders of fact. He elected to have a jury consider the two counts of murder with related gun specifications lodged against him for the shooting of Allen Palmer. And (perhaps in part because it entailed the necessary admission into evidence that at the time of the shooting, he was under indictment for felony drug offenses), he opted to have the judge in the same trial decide the charge of having a weapon while under disability. *See* April 30, 2018 Jury Trial Waiver.

{¶ 2} "At trial, Douthitt admitted that he was the shooter and * * * pursued the affirmative defenses of self-defense and/or the defense of others." Appellant's Brief at 1. The court reached its verdict on the weapon under disability charge before the jury returned its verdicts on the other charges, and sealed that verdict in an envelope. *Id.*; Tr. at 776. The

jury found Mr. Douthitt not guilty of the murder counts and specifications. May 4, 2018 Journal Entry of Verdict. Having then unsealed its verdict, the court found Mr. Douthitt guilty of the third-degree felony of having a weapon under disability; it sentenced him to nine months in prison running consecutively to sentences from other cases (including the drug charges and an earlier weapon under disability offense). May 4, 2018 Journal Entry of Verdict on Count Three; July 9, 2018 Jgmt. Entry; June 20, 2018 Sentencing Transcript at 27-29.

{¶ 3} Mr. Douthitt appeals, positing in his single assignment of error that: "The court's verdict is not supported by sufficient evidence, and thus Defendant's pre-and post-verdict Motions for Acquittal should have been granted." Appellant's Brief at iii.

{¶ 4} Criminal Rule 29 provides that a court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction" of the offense charged. "Because analysis of the evidence for purposes of a Crim.R. 29(A) motion looks at the sufficiency of the evidence, a Crim.R. 29(A) motion and a review of the sufficiency of the evidence are subject to the same analysis." *State v. Clellan*, 10th Dist. No. 09AP-1043, 2010-Ohio-3841, ¶ 7, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 5} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Clellan* at ¶ 8, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency is a test of adequacy of the evidence. * * * * We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt." *Clellan* at ¶ 8 (citations omitted). That is, we will not displace the trial court's verdict on this ground unless "reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001), citing *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

{¶ 6} R.C. 2923.13 defines the crime of having a weapon under disability: "[N]o person shall knowingly acquire, have, carry, or use any firearm * * * if * * * [t]he person * * * is under indictment for or has been convicted of any felony offense involving the illegal possession [of] any drug of abuse * * *." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will

probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶ 7} Mr. Douthitt does not contest the disability he was under given the drug indictments. Rather, he argues that especially in light of the not guilty finding on the murder counts, there was insufficient evidence for the court to have found that he was in possession or constructive possession of the gun at any time other than his use of the weapon in self-defense or the defense of others. Appellant's Brief at 7.

{¶ 8} Mr. Douthitt begins his argument by citing to the doctrine expressed in *State v. Hardy*, 60 Ohio App.2d 325, 330 (8th Dist.1978), that "the prohibitions of R.C. 2923.21 do not restrict the right of an individual under disability from acting in self-defense, when he did not knowingly acquire, have, carry or use a firearm" before that action. The same principle, he argues, would permit him to seize and use a weapon under the doctrine of necessity. Appellant's Brief at 8-9.

{¶ 9} "[T]he jury found his actions reasonable when it acquitted him of murder for the shooting. If shooting Palmer [was] justified, then certainly the act of grabbing the gun must also be justified," Mr. Douthitt submits. Appellant's Brief at 9-10. That proposition, as bolstered by the testimony on self-defense, in his view disposes of his use of the weapon as grounds for conviction. *Id.* And because constructive possession of a firearm cannot be "based merely on proximity to the weapon and knowledge of its existence in the absence of proof that the person exercised dominion and control over the weapon," he concludes that the court lacked sufficient evidence to find him guilty. *Id.* at 10, 11-12.

{¶ 10} Before reviewing the evidence that the trial court had, we offer a few remarks about the analytical framework within which we assess the sufficiency of that evidence. An initial flaw in Mr. Douthitt's syllogism is that under our well established precedents, the trial court in its capacity as the independent finder of fact on the gun count was not constrained by the jury's determinations on the murder counts. That is, "appellant's contention that the jury verdicts of acquittal precluded his conviction for having a weapon while under disability is not well-taken." *State v. Smith*, 10th Dist. No. 14AP-33, 2014-Ohio-5443, ¶ 27 (affirming trial court judgment of guilt on weapon count despite jury verdicts of not guilty on aggravated burglary, aggravated robbery, and kidnapping).

{¶ 11} We have explained that "the several counts of an indictment are independent, and a verdict responding to a designated count will be construed in the light of the count designated, and no other." *Id.* at ¶ 25, quoting *State v. Brown*, 8th Dist. No. 89754, 2008-Ohio-1722 (rejecting argument that conviction on bench-tried weapon under disability count was overridden by jury verdicts of not guilty on attempted murder and felonious assault). Thus, "[t]his court has * * * found no [invalidating] inconsistency in verdicts returned in a single criminal prosecution in which a trial court found a defendant guilty of having a weapon while under disability despite the fact that the jury failed to return guilty verdicts on the remaining counts." *Smith* at ¶ 26, citing *State v. Webb*, 10th Dist. No. 10AP-289, 2010-Ohio-6122 (jury's failure to reach verdict on improper handling count does not undermine trial court's rendering of guilty verdict on weapon under disability); *State v. Page*, 10th Dist. No. 11AP-466, 2012-Ohio-671 (affirming trial court's finding of guilt on weapon under disability charge notwithstanding jury's verdict of not guilty on aggravated robbery, attempted murder, and felonious assault). Again, these holdings reflect the broader principle that "[c]onsistency between verdicts on several counts of an indictment is unnecessary where the defendant is convicted on one or some counts and acquitted on others." *State v. Trewarthe*, 165 Ohio App.3d 91, 2005-Ohio-5697.

{¶ 12} Moreover, of course, there would not be any logical inconsistency between a finding of not guilty as to murder based on a justification of self-defense and a finding of guilty of possessing a weapon under disability at some point beyond the weapon's use in self-defense.

{¶ 13} And we have reiterated that " 'the so-called self-defense exception to the charge of carrying a weapon while under disability is an extremely narrow exception.' " *State v. Escoto*, 10th Dist. No. 98AP-481, 1999 Ohio App. Lexis 512, *9 (quoting *State v. Fryer*, 90 Ohio App.3d 37, 45 (1993) and distinguishing *Hardy* as limited to the immediate self-defense event). The concept applies only where the person under disability did not have actual or constructive "possession of [the weapon] before" he seized it while under the good faith belief that " 'he was in imminent danger' " from a situation he was not at fault for causing and as to which he did not violate any duty to retreat or avoid. *See Escoto* at * 9, 10, quoting *State v. Robbins*, 58 Ohio St.2d 74 (1979) (on elements of self-defense).

{¶ 14} Here, reviewing the evidence in a light most favorable to the prosecution as this evaluation requires, we conclude that the finder of fact was entitled to find Mr. Douthitt guilty beyond a reasonable doubt of having a weapon while under disability. The defense conceded the disabilit(ies), *see, e.g.,* Joint Ex. 2, Tr. at 768-69 (stipulation regarding two felony drug indictments), and Mr. Douthitt's own account had him taking up the gun and shooting Allen Palmer (because, Mr. Douthitt said, he feared for his own life and the lives of his companions), *see* Tr. at 594. Among other matters, the court heard evidence from which it could have concluded some or all of the following:

- That Mr. Palmer had been riding in a car driven by his new girlfriend Ms. Day when he spotted a car driven by his (recently) ex-girlfriend Ms. Jaynes and asked Ms. Day to follow it so that he could speak with Ms. Jaynes (who, as it turned out, had as backseat passengers her new boyfriend Mr. James and his good friend Mr. Douthitt), and that the two cars parked about a minute and a half later;

- That the late Mr. Palmer then had approached the car in which Mr. Douthitt was seated in the back on the driver's side, *see, e.g.,* Tr. at 509 (James testimony), Tr. at 612-14 (Douthitt testimony);

- That Mr. Palmer was not armed, *see, e.g.*, Tr. at 223-24 (Day testimony), 264 (Jaynes testimony that she did not see Palmer with a gun), 622 (Douthitt testimony that he saw no gun on Palmer the day of the shooting);

- That Mr. Palmer said words to the effect of, "You're going to have to get out of the car with that," before backing up two steps and being shot by the person from the left rear seat who had opened his door to shoot, *see* Tr. at 216-19 (Day testimony);

- That Mr. Palmer fell directly to the ground after being shot, *see, e.g.,* Tr. at 526 (James testimony), and that his body came to rest some feet from the car, *see, e.g.,* State's Ex. A28, A32, Tr. 416-18 (pooled blood stains at some remove from the car);

- That before being shot, Mr. Palmer had stuck both of his hands inside the car, or not reached into the car at all, *compare* Tr. at 260 (Jaynes testimony that Palmer was

using both hands to punch her) *with* Tr. at 519 (James testimony that Palmer had grabbed at Jaynes with his left arm only), 234-35 (Day testimony that Palmer "wasn't * * * super close up to the car"), and that Mr. Douthitt, who testified he was "not sure" what Mr. Palmer was trying to do when "leaning in," Tr. at 637, later had specified to police that Mr. Palmer "had his hands actually in the car. I don't know if he was trying to hit her or whatever he was trying to do, but his hands directly in the car and I just pointed the gun directly out – out the window basically," and confirmed at trial that he had told police he had seen both of Mr. Palmer's (empty) hands before shooting, Tr. at 647-49;

- That Mr. Palmer may not have known that Mr. Douthitt and his friend Mr. James were in the back seat of the car, *see* Tr. at 300 (Jaynes testimony) and that in any event he did not address them or make threats against them at the time of the shooting, *see, e.g.,* Tr. at 300 (Jaynes testimony), 522 (James testimony), 624-25 (Douthitt testimony);

- That the gun Mr. Douthitt used in the shooting had been "relatively open" on the back floor of the car, *see, e.g.,* Tr. at 521 (James's testimony), 517-18 (James's testimony first that gun had been "on my side of the car on the floor under the driver's seat," and then that the gun had been on his [right-hand] side of the back floor, not under the driver's seat [on the side on which Douthitt was sitting]), and that Mr. Douthitt was aware of the gun and knew it was accessible to him, Tr. at 610-11, 621 (Douthitt testimony);

- That Mr. Douthitt went for the gun while Mr. Palmer was approaching the car, Tr. at 516-17 (James's testimony, "he knew this guy wasn't welcome here. You know what I mean? So he went ahead and was already getting in motion"), and that he wound up firing approximately four shots, Tr. at 525 (James testimony), 216 (Jaynes testimony);

- That his companions in the car asked him "why did you do that?", Tr. at 219 (Day testimony);

- That Ms. Jaynes, who had been in the driver's seat of the car with Mr. Douthitt in the back, told police in the

> aftermath of the shooting that Mr. Douthitt had shot Mr. Palmer for no reason, Tr. at 301 (Jaynes testimony); and
>
> • That Mr. Douthitt left the scene immediately ("fled the scene," in the words of Mr. James, Tr. at 521), called a friend to pick him up to take him to his grandmother's house, and was apprehended by police while in that other vehicle, Tr. at 325, 329 (Smith testimony).

{¶ 15} On this record, and notwithstanding defense testimony that Mr. Douthitt believed Mr. Palmer to be a dangerous gang member who had shot up Mr. James's unoccupied car some weeks earlier, the trial judge was entitled to find that Mr. Douthitt actually or constructively possessed a firearm outside the scope of any justification involving self-defense or the defense of others. Mr. Douthitt's argument on appeal that he "had no knowledge of the gun's existence and, even if he did, certainly no opportunity to exercise dominion and control over it," Appellant's Brief at 11-12, does not square with Mr. James's testimony or his own that he knew of the gun, *see* Tr. at 520, 610, that it was lying "relatively open" on the back floor of the car, Tr. at 521 (James testimony), or with the apparent fact that whether or not it was on the rear floor under the driver's seat, Tr. at 517-18, it was within his reach and that he actually took possession of it, *see, e.g.,* Tr. at 517, and then, by his own admission, used it, Tr. at 594. When the record is viewed in the light most favorable to the state, it reflects sufficient evidence for the trial judge to conclude that Mr. Douthitt possessed the gun outside of self-defense/defense of others parameters.

{¶ 16} Moreover, and under the same standard, the trial court was not obligated to conclude that Mr. Douthitt even at the time that he fired the gun had a reasonable and honest belief that he or Ms. Jaynes or Mr. James were in immediate danger of death or great bodily harm such that resort to the gun was justified. There was no testimony that Mr. Palmer had a gun at the scene, for example, and there was testimony from which the trial judge could have concluded that Mr. Douthitt did not think that Mr. Palmer had a gun in his hands, and that Mr. Douthitt was not sure what Mr. Palmer was doing with regard to Ms. Jaynes (who testified that she suffered no physical injuries from the event, Tr. at 262). There was sufficient evidence to support the weapon under disability verdict.

{¶ 17} Further, and although Mr. Douthitt's appeal assigns no error based on the "manifest weight" of the evidence, we note a lone reference to that phrase on page 12 of

appellant's brief and find it appropriate to address that issue very briefly in the context of noting that the trier of fact "is free to believe or disbelieve all or any of the testimony," *State v. Crosky*, 10th Dist. No. 06AP-655, 2008-Ohio-145, ¶ 78, and that "the weight to be given the evidence and credibility of the witnesses are primarily for the trier of facts," *State v. Thomas*, 70 Ohio St.2d 79, 79-80 (1982). Simply put, this is not that most "exceptional case in which the evidence weighs heavily against the conviction," *see State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). On reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of the witnesses, we cannot say that in resolving conflicts in the evidence, the trial judge "clearly lost [her] way and created such a manifest miscarriage of justice that the conviction must be reversed," *see State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22 (citation omitted). The trial judge heard the witnesses in person, evaluated the evidence before her, and arrived at her verdict; under the circumstances of this case, it is not for us to second guess that determination.

{¶ 18} We overrule Mr. Douthitt's single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J. and BEATTY BLUNT, J., concur.

———————————