[Cite as *State v. Schall*, 2024-Ohio-1896.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 113070 |
| v. | : | |
| MATHEW SCHALL, | : | |
| Defendant-Appellant. | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 16, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-679199-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Carley Berman, Assistant Prosecuting Attorney, *for appellee.*

Patrick S. Lavelle, *for appellant.*

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, Mathew Schall, appeals his conviction for having weapons while under disability. He contends that the doctrine of res judicata

barred his conviction after a jury acquitted him of other related offenses that involved possession of a firearm. For the reasons that follow, we affirm.

**Factual Background and Procedural History**

{¶ 2} On April 11, 2023, a Cuyahoga County Grand Jury indicted Schall on 12 counts: five counts of felonious assault in violation of R.C. 2903.11(A)(2) with one- and three-year firearm specifications (Counts 1-5), two counts of improperly discharging a firearm into a habitation in violation of R.C. 2923.161(A)(1) with one- and three-year firearm specifications (Counts 6 and 7), two counts of criminal damaging or endangering in violation of R.C. 2909.06(A)(1) (Counts 8 and 9), two counts of discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(2) (Counts 10 and 11) and having weapons while under disability in violation of R.C. 2923.13(A)(2) (Count 12). The charges related to an incident that occurred on or about October 3, 2021 in which Schall allegedly fired numerous gunshots near the homes of Amanda Comer and Nancy Reid, causing damage to Comer's car, garage and home and damage to Reid's home.

{¶ 3} On July 11, 2023, the case proceeded to trial. Schall waived a jury trial on the having weapons while under disability charge. The remaining charges were tried to a jury.

{¶ 4} At trial, the state presented testimony from four witnesses: victim Comer, K.S. (the daughter of Comer's partner, C.L. Schall ("C.L.")) and two police officers. Comer testified that sometime between 1:00 a.m. and 3:00 a.m. on October 3, 2021, she and C.L. were watching television when they heard "a whole

bunch" of gunshots "close" to their home — i.e., the downstairs unit of a duplex on West 97th Street in Cleveland. The gunfire lasted for approximately ten minutes. Two of C.L.'s children and C.L.'s brother and his wife were also in the home at the time of the shooting. Comer testified that when she went outside the next morning, she discovered that "everything" in the detached garage was "destroyed" and that her car, a white Ford Edge, was "full of bullets." She then called the police. She later discovered that her house, "by the back door," and her neighbor's house had also been "hit." Comer stated that gunfire "happens all the time" in her neighborhood, but that this was the first time her property had been hit.

{¶ 5} On October 2, 2021, the day before the shooting, Comer had had an altercation with her upstairs neighbor, Barbara McCree. Comer stated that McCree had been screaming, cursing and yelling at her, threatening to "jump her" and told her, "[W]ait until tonight, b**tch." Comer indicated that she initially told police she believed McCree could have been responsible for the shooting because, at that time, she did not know who else could have been involved.

{¶ 6} Comer stated that approximately two or three weeks after the shooting, Schall, who is C.L.'s nephew, admitted that he had been involved and apologized to her and C.L. for the shooting. Comer testified:

> [Schall] was over and he was in the garage and he was just saying random things like repeatedly over and over again and in between different mumblings he'[d] say, I'm sorry, quote, I shot your sh*t up. He said that six to seven times that night.

{¶ 7} Comer stated that she believed Schall because she had known him for over 20 years and "he's not known to say something if he didn't do it." She indicated that she immediately called the detective who was investigating the incident to report Schall's statement but that they "played phone tag" for a while. Comer testified that she had previously seen Schall with firearms and that she did not think she had ever seen him "without one."

{¶ 8} K.S. testified that, on the night of the incident, she woke up when she heard "a whole bunch of gunshots." She indicated that she had heard gunshots in her neighborhood before but that these were "closer." She did not otherwise know anything about the shooting.

{¶ 9} Cleveland police officer Thomas Bowser was one of the responding officers. He testified that, when he arrived at the scene, he observed multiple bullet holes in the car, in items in the garage and in the back of the garage. He also observed one bullet hole in the back of Comer's house and one bullet hole in the side of Reid's house. He indicated that the shots had been fired from a park behind Comer's garage. Bowser stated that he and/or his partner spoke with Comer, McCree, Reid and a witness across the street who heard McCree's threats to Comer the day before the shooting. The officers also located and collected spent shell casings in the park behind Comer's home. Bowser stated that the police department's scientific investigation unit was called out to photograph the scene and that the vehicle was later towed and "processed."

{¶ 10} Cleveland police detective Richard Rospierski was assigned to investigate the incident. He testified that, after reviewing the police report, he went to the scene where he met with Comer and observed the damage to her home and the garage. He indicated that Comer mentioned that she "gotten into a verbal altercation with her neighbor" the day before the shooting but that McCree was not a "named suspect" because Comer had not seen McCree shoot at the home and no one else had identified McCree as the shooter. Rospierski stated that he attempted to contact McCree several times during his investigation but was unsuccessful. He indicated that he did not obtain statements from anyone else in Comer's or McCree's homes at the time of the October 3, 2021 incident and did not speak with the responding officers or the neighbor who overheard McCree's threats to Comer.

{¶ 11} Rospierski stated that there was no known video footage of the incident "where you would be able to identify somebody positively" and that no fingerprint or DNA analysis was performed on the spent shell casings or bullet fragments recovered from the scene.

{¶ 12} Rospierski testified that Comer contacted him a couple weeks after the incident and informed him that Schall was responsible for the shooting because he had apologized to Comer, saying, "I'm sorry I shot your sh*t up," "six to seven times." Rospierski stated that the apparent motive for the shooting was that Schall had loaned C.L. $80 which he had not repaid.

{¶ 13} Rospierski testified that he attempted to contact Schall but was not successful. He researched Schall's presence on social media and testified that he

found a 2019 Facebook posting, purportedly from Schall, that included a photograph of Schall holding a Glock 43.

{¶ 14} Rospierski testified that no gun was recovered from Schall or the scene and that Comer's statement that Schall had apologized and the unrelated Facebook posting was the only information he had obtained through his investigation that allegedly connected Schall to the shooting.

{¶ 15} In addition to the witness testimony, the state introduced into evidence photographs of the vehicle and the scene, screenshots of certain of Schall's postings on Facebook, a screenshot from one of the responding officer's body cameras depicting McCree and an envelope of shell casings recovered from the scene. The parties stipulated to the admissibility of a judgment entry reflecting Schall's prior conviction for attempted felonious assault in Cuyahoga C.P. No. CR-08-516256 in April 2009.

{¶ 16} After the state rested, Schall made a motion to dismiss the case pursuant to Crim.R. 29. The trial court denied the motion. The defense rested without presenting any witness testimony.

{¶ 17} The jury found Schall not guilty on Counts 1-11. The trial court found Schall guilty on Count 12, the having weapons while under disability charge. The trial court explained the basis for its guilty verdict as follows:

> As we all know, this defendant tried Count 12 having weapons under disability in violation of 2923.13(A)(2) to the Bench. This court finds the defendant guilty of that count. I believe the testimony of Amanda Comer. And one witness, in fact, can result in a guilty verdict.

The evidence was that he shot — that he confessed to shooting up the house, and the car, and the garage, and there was no evidence to the contrary. So the Court renders a finding of guilt as to Count 12.

{¶ 18} At the sentencing hearing, the trial court further explained:

So the Court wishes to state that I understand the jury's verdict completely. But in terms of Count 12, it was the Court's duty to weigh the credibility of the witnesses in this case, and I found Amanda Comer's testimony to be quite believable. I think it was extremely difficult for her to appear in court and testify against the nephew of her partner. She did indicate to the State and the State placed upon the record that she had safety concerns and was scared of the victim. And indeed one witness can be enough to sustain [a] conviction, if the trier of fact believes that all elements of the offense have been established beyond a reasonable doubt.

There was, of course, the stipulation that this defendant was under a disability. He actually had multiple disabilities, because of his rather lengthy criminal record. So the Court made the finding as to guilt in Count 12, based upon the evidence. * * *

Now, although he was acquitted of the first 11 counts, he was convicted because of the statement Ms. Comer placed upon the record that Mathew Schall, sometime after the shooting, appeared at her home either high, drunk, or intoxicated. I think she said he hadn't slept in days, and made a statement repeatedly, "I'm sorry that I shot up your shit."

That is testimony that is believed by the Court.

So the defendant himself, through an admission to a witness, places himself at the scene of a shooting where [shots] were fired.

{¶ 19} The trial court sentenced Schall to 36 months in prison and imposed one-to-three years of postrelease control. Schall appealed, raising the following sole assignment of error for review:

The doctrine of res judicata bars appellant's conviction involving the possession of a firearm while under disability.

**Law and Analysis**

{¶ 20} Schall argues that the trial court erred as a matter of law by convicting him of having weapons while under disability based on the same evidence the jury used to acquit him of crimes involving the possession and use of a firearm.[1] Schall contends that when the jury acquitted him of felonious assault, improperly discharging a firearm into a habitation and discharge of a firearm on or near prohibited premises, "it implicitly made a determination in regards to Appellant's possession of a gun" — i.e., that Schall had not possessed a gun — and that, based on the doctrine of res judicata/collateral estoppel, the trial court was required "to accept the [jury's] conclusion as it pertained to the possession of the gun" and was precluded from finding that Schall knowingly possessed a firearm when it rendered its verdict on the having weapons while under disability charge. Schall asserts that the trial court was "not at liberty to reevaluate the credibility of a trial witness and reach a different result on the issues" and that "the doctrine of res judicata barred the trial court from disregarding the jury determination that there was not sufficient evidence to reach a conclusion that [Schall] possessed a firearm." He requests that his conviction for having weapons while under disability be vacated and the case against him dismissed.

{¶ 21} In support of his argument, Schall cites the Second District's decision in *State v. Hay*, 169 Ohio App.3d 59, 2006-Ohio-5126, 861 N.E.2d 893 (2d Dist.),

---

[1] Schall does not challenge his conviction for having weapons while under disability based on the sufficiency or manifest weight of the evidence.

and the Tenth District's decisions in *State v. Cordle*, 10th Dist. Franklin No. 84AP-484, 1985 Ohio App. LEXIS 5446 (Jan. 8, 1985), *State v. Armstrong*, 10th Dist. Franklin No. 90AP-690, 1991 Ohio App. LEXIS 3407 (July 16, 1991), and *State v. Capaniro*, 10th Dist. Franklin No. 94APC09-1377, 1995 Ohio App. LEXIS 1064 (Mar. 21, 1995). These cases are not persuasive.

{¶ 22} In *Hay*, the trial court dismissed Count 1 of the indictment at the conclusion of the state's case after determining, as a matter of law, that there was insufficient evidence that the defendant had furnished alcohol to a person identified as W.F. *Id*. at ¶ 4. However, the trial court permitted two other counts to go to the jury that were also predicated upon the defendant furnishing alcohol to W.F. *Id*. at ¶ 2-4, 11. The defendant was convicted on the other two counts. *Id*. at ¶ 4. On appeal, the defendant argued that once the trial court concluded that the evidence was insufficient to prove that the defendant had furnished alcohol to W.F. and dismissed Count 1, it should have also dismissed Counts 2 and 3. *Id*. at ¶ 11. The Second District agreed. It held that "[a]fter finding that the evidence was insufficient as a matter of law to demonstrate that [the defendant] had furnished alcohol to W.F." and dismissing Count 1, "the doctrine of res judicata precluded the court from allowing the remaining two counts * * * to be premised on those same set of facts" and "required the trial court to dismiss [C]ounts 2 and 3." *Id*. at ¶ 11, 26-28.

{¶ 23} Here, there was no finding by the trial court that the evidence was insufficient to support any of the charges at issue.

{¶ 24} In *Cordle*, 1985 Ohio App. LEXIS 5446, the parties had stipulated that the defendant did not have a valid license, so the sole issue to be decided by the jury when considering a charge of operating a motor vehicle without an operator's license was whether the defendant had actually operated the motor vehicle. *Id.* at 1. The jury acquitted the defendant on that charge; however, the trial court found the defendant guilty of operating a motor vehicle without reasonable control. *Id.* at 1-2. In reversing the trial court's conviction, the Tenth District stated:

> [W]here a single issue is sent to the jury, and this issue negates an element of the offense simultaneously tried to the court, the trial judge must defer to the finding of the jury on that issue so as to preserve that issue for jury trial and to preclude a later judgment contrary to the jury verdict. The effect of this holding would prevent inconsistent verdicts, a principle of res judicata, and promote integrity in the jury system. Furthermore, trying the offenses simultaneously provides for judicial economy since the underlying facts arise from the same transaction and preserves the right to a jury trial on issues in offenses where such a right exist.

*Id.* at 6.

{¶ 25} The court indicated that "unique circumstances" were present in that case because "the only issue tried to the jury on the no operator's charge was whether [the defendant] 'operated the motor vehicle,'" that issue was "also an element of the offense tried to the court" and "the identical conduct forms the basis for both offenses." *Id.* at 5. The court noted however, that "[i]t is only where the issue is identical in both cases tried to the court and jury that the judge must defer to the jury's verdict." *Id.* at 6-7.

{¶ 26} In *Armstrong,* 1991 Ohio App. LEXIS 3407, and *Capaniro*, 1995 Ohio App. LEXIS 1064, the Tenth District followed *Cordle*. In *Armstrong*, a charge of vehicular homicide was submitted to the jury, which found the defendant not guilty, and a charge of improper lane change was tried to the bench, which found the defendant guilty. *Id*. at 2. Determining that "the entirety of the conduct for which appellant was tried on these two charges was the same," i.e., that "the violation of R.C. 4511.33 was the basis for the charge under R.C. 2903.07," the Tenth District held that *Cordle* applied, i.e., "'where a single issue is sent to the jury, and this issue negates an element of the offense simultaneously tried to the court, the trial judge must defer to the finding of the jury on that issue.'" *Id*. at 4-5, quoting *Cordle* at 6. The Tenth District reversed the defendant's conviction on the improper lane change charge and entered a judgment of acquittal. *Id*. at 5.

{¶ 27} In *Capaniro*, 1995 Ohio App. LEXIS 1064, the jury found the defendant not guilty of operating a motor vehicle under the influence of alcohol and operating a motor vehicle while under a court-ordered suspension and the trial court found the defendant guilty of failing to maintain an assured clear distance. *Id*. at 1-2. The parties had stipulated that the defendant's driver's license was under suspension, so, in the court's view, the only "essential issue" to be determined by the jury was whether the defendant was the operator of the vehicle. *Id*. at 3. In reaching its decision, the trial court acknowledged that the jury, by its not guilty verdict, had found that the defendant had not been driving the vehicle but, nevertheless, entered a guilty verdict on the failure to maintain an assured clear distance charge, stating

that it found that the defendant's witnesses were either "not credible or were biased in favor of [the defendant] based on years of friendship." *Id.* at 2.

{¶ 28} On appeal, the Tenth District reversed the defendant's conviction for failure to maintain an assured clear distance, stating that "[b]y its finding of not guilty, the jury found [the defendant] was not the driver of the vehicle" and "the trial judge must defer to that finding." *Id.* at 3-4. The state, however, had not filed an appellate brief in that case and the court noted that, pursuant to App.R. 18(C), it could "accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." *Id.* at 3. The Tenth District reversed the trial court's judgment and remanded the case with instructions that the trial court enter a judgment of acquittal. *Id.* at 4.

{¶ 29} Even assuming these cases are still good law,[2] this case is different. This is not a case in which "a single issue" was sent to the jury that "negated an element" of the offense tried by the trial court. *See, e.g., State v. Lett*, 160 Ohio App.3d 46, 2005-Ohio-1308, 825 N.E.2d 1158, ¶ 39-46 (8th Dist.) (distinguishing *Cordle* and rejecting defendant's argument that he was denied due process when the trial court found him guilty of having a weapon while under disability after the jury had "expressly found on all counts that he did not possess a firearm," noting that the "firearm specification charges involve different elements and the conviction of one does not preclude the conviction of the other").

---

[2] *See, e.g., State v. Douthitt*, 10th Dist. Franklin No. 18AP-547, 2019-Ohio-2528, ¶ 10-11; *State v. Smith*, 10th Dist. Franklin No. 14AP-33, 2014-Ohio-5443, ¶ 19-27; *State v. Webb*, 10th Dist. Franklin No. 10AP-289, 2010-Ohio-6122, ¶ 56-63.

{¶ 30} To obtain a conviction for felonious assault in violation of R.C. 2903.11(A)(2), the state needed to prove, beyond a reasonable doubt, that Schall knowingly caused or attempted to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance, i.e., a firearm. To obtain a conviction for improperly discharging a firearm into a habitation in violation of R.C. 2923.161(A)(1), the state needed to prove, beyond a reasonable doubt, that Schall, without privilege to do so, knowingly discharged a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual. To obtain a conviction for discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(2), the state needed to prove, beyond a reasonable doubt, that Schall "discharge[d] a firearm on a lawn, park, pleasure ground, orchard, or other ground appurtenant to a schoolhouse, church, or inhabited dwelling, the property of another, or a charitable institution." R.C. 2923.13(A)(2) provides, in relevant part: "Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person * * * has been convicted of any felony offense of violence[.]"

{¶ 31} The charges at issue are all separate offenses, each requiring proof beyond a reasonable doubt of a different set of elements. Although the jury could have acquitted Schall on the charges of felonious assault, improperly discharging a firearm into a habitation and discharge of a firearm on or near prohibited premises if it found that Schall did not "possess a firearm," as Schall argues, the jury could

have also acquitted Schall on these offenses because it concluded that the state had failed to meet its burden of proof as to one or more of the other elements of each of those offenses. *See, e.g., State v. Brown*, 8th Dist. Cuyahoga No. 89754, 2008-Ohio-1722, ¶ 26-29 (jury's acquittal on charges of attempted murder and felonious assault were not inconsistent with trial court's determination of guilt on having a weapon while under disability because the offenses are "separate charges, each requiring proof beyond a reasonable doubt on a different set of elements"); *State v. White*, 8th Dist. Cuyahoga No. 90839, 2008-Ohio-6152, ¶ 14 ("The distinction between the charged offenses is that having a weapon under disability only requires a showing that [the defendant] possessed a firearm, not that [the defendant] actually discharged the firearm. If the jury did find [the defendant] not guilty of felonious assault because it did not believe there was proof beyond a reasonable doubt to show that he fired his firearm, that finding would not be inconsistent with proof that he actually possessed the firearm. One can possess a firearm without firing it and, in fact, need not be in actual physical contact with the firearm as long as the firearm is readily at hand.").

{¶ 32} This court has previously considered — and rejected — arguments like those made by Schall several times.

{¶ 33} Under the doctrine of res judicata, "'a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject to the previous action.'" *State v. Martin*, 8th Dist. Cuyahoga No. 110576, 2021-Ohio-4213, ¶ 8, quoting *Grava v.*

*Parkman Twp.*, 73 Ohio St.3d 379, 382, 653 N.E.2d 226 (1995). Collateral estoppel is

> "the doctrine that recognizes that a determination of facts litigated between two parties in a proceeding is binding on those parties in all future proceedings. Collateral estoppel 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'"

(Emphasis deleted.) *State v. Eason*, 2016-Ohio-5516, 69 N.E.3d 1202, ¶ 56 (8th Dist.), quoting *State v. Lovejoy*, 79 Ohio St.3d 440, 443, 683 N.E.2d 1112 (1997), quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970).

{¶ 34} In *Eason*, the defendant was charged with drug trafficking, drug possession, possessing criminal tools, carrying concealed weapons, improperly handling firearms in a motor vehicle and having weapons while under disability. *Id.* at ¶ 8. The having weapons while under disability charge was tried to the bench, and the jury considered the remaining charges against the defendant. *Id.* at ¶ 10. The jury acquitted the defendant on the counts it considered, but the trial court found the defendant guilty of having weapons while under disability. *Id.* The defendant appealed, arguing, among other things, that his conviction for having weapons while under disability was barred by collateral estoppel and was inconsistent with the jury's verdict. *Id.* at ¶ 1, 11, 51. Although it found that the jury and the trial court had rendered inconsistent verdicts, i.e., the jury determined that the defendant did not knowingly carry, have or transport the firearm for the purposes of the charges of carrying concealed weapons and improperly handling firearms in a motor vehicle

and the trial court determined that the defendant did knowingly acquire, have, carry or use "the same firearm" for the purposes of the having weapons while under disability charge, this court affirmed the defendant's conviction for having weapons while under disability, explaining as follows:

> Collateral estoppel is the doctrine that recognizes that a determination of facts litigated between two parties in a proceeding is binding on those parties in all future proceedings. * * * The instant matter neither involves successive prosecutions nor future proceedings. * * * [T]he jury's acquittal did not preclude the trial court's verdict finding appellant guilty of having weapons while under disability. * * *
>
> The inconsistent verdicts did not pertain to the same count, but rather to separate and distinct counts in the indictment. * * * Each count of a multi-count indictment is deemed distinct and independent of all other counts, and thus inconsistent verdicts on different counts do not justify overturning a verdict of guilt. * * * Consistency between verdicts on several counts of a criminal indictment is unnecessary, and where the defendant is convicted on one or some counts and acquitted on others the conviction will generally be upheld, irrespective of its rational incompatibility with the acquittal. * * *
>
> [T]he inconsistency between the jury's and the trial court's verdicts does not require reversal of appellant's conviction for having weapons while under disability. * * * Appellant's conviction for having weapons while under disability did not violate his protections against double jeopardy and was not precluded by the doctrine of collateral estoppel.

(Emphasis deleted.) *Id.* at ¶ 56-57, 60, 67-70.

{¶ 35} In *State v. Callahan*, 8th Dist. Cuyahoga No. 106445, 2018-Ohio-3590, the jury acquitted the defendant of charges of aggravated murder, murder, attempted murder, felonious assault, discharge of a firearm on or near prohibited

premises and improperly discharging a firearm at or into a habitation[3] but the trial court found the defendant guilty of two charges of having weapons while under disability. *Id.* at ¶ 2, 17, 19. The defendant argued that his convictions for having weapons while under disability were barred by the doctrine of collateral estoppel because the jury acquitted him of all the weapons-related charges, so there was no evidence upon which the trial court could have found he illegally possessed a firearm. *Id.* at ¶ 19.

{¶ 36} This court disagreed and held that the alleged inconsistency between the trial court's and the jury's verdicts did not require reversal of the defendant's convictions for having weapons while under disability. *Id.* at ¶ 30. Citing *Eason*, this court reasoned that "'"double jeopardy and collateral estoppel do not apply where the inconsistency in the responses arise out of inconsistent responses to different counts, not out of inconsistent responses to the same count"'" and affirmed the trial court. *Id.* at ¶ 27, 30, 32, quoting *Eason* at ¶ 68, quoting *Lovejoy*, 79 Ohio St.3d 440, 683 N.E.2d 1112, at paragraph two of the syllabus. *See also State v. O'Malley*, 8th Dist. Cuyahoga No. 2021-Ohio-2038, ¶ 32-35 (collateral estoppel did not bar trial court's guilty verdict for having weapons while under disability following jury's acquittal for grand theft of firearm); *State v. Rice*, 8th Dist. Cuyahoga No. 109712, 2021-Ohio-1882, ¶ 34 (rejecting defendant's argument that inconsistency between trial court's guilty verdict on having weapons while under

---

[3] The jury found the defendant guilty of receiving stolen property but acquitted him of the attendant firearm specifications. *Id.* at ¶ 17.

disability charge and jury's determination that defendant was "not complicit in the commission of underlying offenses" of murder, attempted murder, felonious assault, aggravated robbery, robbery, grand theft and kidnapping required reversal of conviction for having weapons while under disability); *State v. Stevens*, 8th Dist. No. 103516, 2016-Ohio-4699, ¶ 18-20 (rejecting defendant's argument that jury's finding that defendant was not guilty of aggravated robbery, felonious assault and the accompanying firearm specifications "factually precluded" the trial court from convicting the defendant on having weapon while under disability charge because "the jury concluded he did not have a weapon"); *Brown*, 2008-Ohio-1722, at ¶ 25-29 (rejecting argument that conviction on bench-tried having weapon while under disability charge was precluded by jury's acquittal on attempted murder and felonious assault charges, noting that "[i]n contrast with civil cases, consistency between verdicts on several counts of a criminal indictment is unnecessary and, where the defendant is convicted on one or some counts and acquitted on others, the conviction will generally be upheld, irrespective of its rational incompatibility with the acquittal"), citing *State v. Woodson*, 24 Ohio App.3d 143, 493 N.E.2d 1018 (10th Dist.); *State v. Hudson*, 2017-Ohio-645, 85 N.E.3d 371, ¶ 17 (7th Dist.) ("During a single prosecution for multiple offenses, a court is not prohibited from finding a defendant guilty of having a weapon while under disability after a jury finds him not guilty of certain offenses during which he was said to have possessed a gun."); *State v. Douthitt*, 10th Dist. Franklin No. 18AP-547, 2019-Ohio-2528, ¶ 10-11 ("[U]nder our well established precedents, the trial court in its capacity as the

independent finder of fact on the gun count was not constrained by the jury's determinations on the murder counts," i.e., defendant's contention that "'the jury verdicts of acquittal precluded his conviction for having a weapon while under disability is not well-taken.'"), quoting *State v. Smith*, 10th Dist. Franklin No. 14AP-33, 2014-Ohio-5443, ¶ 19-27 (affirming conviction on having weapons while under disability charge tried to the bench despite jury verdicts of not guilty on aggravated burglary, aggravated robbery and kidnapping charges); *State v. Webb*, 10th Dist. Franklin No. 10AP-289, 2010-Ohio-6122, ¶ 56-63 (rejecting defendant's double jeopardy/collateral estoppel arguments that jury's inability to reach a verdict on improper handling count was inconsistent with trial court's guilty verdict on charge of having weapon while under disability).

{¶ 37} This case involved a single proceeding, with different charges heard by different factfinders, at Schall's request. Based on the foregoing, Schall's conviction for having weapons while under disability was not barred by res judicata or collateral estoppel. We overrule Schall's assignment of error.

{¶ 38} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds that there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
EMANUELLA D. GROVES, J., CONCUR